******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PAUL JOHN FERRI *v.* NANCY POWELL-FERRI ET AL.
(AC 42068)

Prescott, Devlin and D'Addabbo, Js.

*Syllabus*

The plaintiff, F, whose marriage to the defendant, P, previously had been
dissolved, appealed to this court from the summary judgment rendered
in favor of the defendants, an attorney and a law firm, who represented
P in several interrelated dissolution proceedings. F sought to recover
damages from the defendants as a result of alleged vexatious litigation,
which arose out of a declaratory judgment action involving a trust. F
was the beneficiary of the trust and, during the pending dissolution
matter, the trustees, without F's knowledge or consent, formed a new
trust and decanted the assets of the original trust into the new one. The
trustees then brought a declaratory judgment action, seeking approval
of their actions in forming the new trust. The defendants brought a
cross complaint against F in the declaratory judgment action, alleging
that F violated his duty to preserve marital assets by allowing the trustees
to remove assets from the marital estate. The trial court rendered sum-
mary judgment in favor of F on the cross complaint, concluding that P
failed to state a cause of action. On appeal, F claimed, inter alia, that
the trial court erred in determining that the defendants had probable
cause to bring the cross complaint. *Held* that the trial court properly
granted the defendants' motion for summary judgment as that court
properly determined that the defendants had probable cause to bring
and to prosecute the cross complaint; contrary to F's argument, the
trial court applied the correct standard for determining whether the
defendants had probable cause to prosecute the cross complaint, and
properly determined that a meritless action did not necessitate the
conclusion that it lacked probable cause or was frivolous, the viability
of the cross complaint did not depend on any false allegation that F
knew of the trustees' intention to decant the original trust prior to the
actual decanting and did not allege that F failed to act prior to the
decanting, rather, the cross complaint alleged that F failed to act after
becoming aware of the trustees' decanting of the original trust, and,
accordingly, the court properly rejected F's contention that the defen-
dants lacked probable cause because they knew that F only learned
about the decanting after the fact, the trial court correctly determined
that the lack of precedent in other jurisdictions did not render the
defendants' cross complaint as being without probable cause, as the
extensive record in the interrelated cases and the briefs submitted dem-
onstrated that the defendants zealously sought a remedy for their client,
and, when presented with the trustees' action, the defendants attempted
to defend and vindicate their client's interests.

Argued January 13—officially released September 15, 2020

*Procedural History*

Action to recover damages for vexatious litigation,
and for other relief, brought to the Superior Court in
the judicial district of Hartford, where the court, *Moll,
J.*, denied the plaintiff's motion for summary judgment
and granted the motion for summary judgment filed
by the defendant Thomas Parrino et al. and rendered
judgment thereon, from which the plaintiff appealed to
this court. *Affirmed.*

*Jeffrey J. Mirman,* for the appellant (plaintiff).

*Robert W. Cassot,* for the appellees (defendant Thomas
Parrino et al.).

*Opinion*

D'ADDABBO, J. In this vexatious litigation action, the plaintiff, Paul John Ferri, appeals following the rendering of summary judgment in favor of the defendants Thomas Parrino and the law firm of Nusbaum & Parrino, P.C. (Parrino defendants).[1] On appeal, the primary issue is whether the trial court properly concluded that the Parrino defendants had probable cause to initiate and pursue their cross complaint filed against Ferri in a prior lawsuit. We affirm the judgment of the trial court.

The present action is the third in a series of interrelated matters involving a dispute over the assets of a trust account. In the first action, the defendant Nancy Powell-Ferri sought the dissolution of her marriage to Ferri. In that action, a major marital asset in dispute was a trust created in 1983 and valued at between $60 million and $70 million. Powell-Ferri was represented in this action by the Parrino defendants.

While the dissolution action was pending, the trustees of the 1983 trust brought a declaratory judgment action against Powell-Ferri and Ferri, seeking approval of the trustees' actions in forming another trust in 2011, into which they decanted all of the assets of the 1983 trust. The Parrino defendants also represented Powell-Ferri in the declaratory judgment action. As part of the trustees' action, the Parrino defendants filed a cross complaint against Ferri, on behalf of Powell-Ferri, alleging that Ferri had violated his duty to preserve the marital assets by allowing the trustees to remove assets from the marital estate. The trial court, *Munro, J.*, rendered summary judgment in favor of Ferri on the cross complaint, concluding that Powell-Ferri failed to state a cause of action. Our Supreme Court affirmed this decision on appeal and declined to recognize the new cause of action. See *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 235, 116 A.3d 297 (2015).

The cross complaint against Ferri in the declaratory judgment action, brought by the Parrino defendants on behalf of Powell-Ferri, forms the basis for the present vexatious litigation action brought by Ferri against Powell-Ferri and the Parrino defendants. In this action, Ferri alleged that the Parrino defendants lacked probable cause to institute and pursue the cross complaint. The trial court, *Moll, J.*, rendered summary judgment in favor of the Parrino defendants. Ferri then filed the present appeal, claiming that the trial court erred by (1) determining that the Parrino defendants had probable cause to bring a cross complaint, (2) concluding that the Parrino defendants had complied with their obligations under rule 3.1 of the Rules of Professional Conduct, (3) denying Ferri's motion for summary judgment as to the Parrino defendants,[2] and (4) determining that the Parrino defendants had not acted with malice in pursuing their cross complaint. Additional facts will be set

forth as necessary.

We begin by setting forth the applicable standard of review. "The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *King* v. *Volvo Excavators AB*, 333 Conn. 283, 290–91, 215 A.3d 149 (2019). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *NetScout Systems, Inc.* v. *Gartner, Inc.*, 334 Conn. 396, 408–409, 223 A.3d 37 (2020). "Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *King* v. *Volvo Excavators AB*, supra, 291.

"A vexatious suit is a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint. To establish either cause of action, it is necessary to prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action. . . . Malice may be inferred from lack of probable cause. . . . The want of probable cause, however, cannot be inferred from the fact that malice was proven. . . . A statutory action for vexatious litigation under General Statutes § 52-568[3] . . . differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages. In either type of action, however, [t]he existence of probable cause is an absolute protection against an action for malicious prosecution, and what facts, and whether particular facts, constitute probable cause is always a question of law. . . . Accordingly, our review is plenary." (Footnote added; internal quotation marks omitted.) *Tatoian* v. *Tyler*, 194 Conn. App. 1, 57–58, 220 A.3d 802 (2019), cert. denied, 334 Conn. 919, 222 A.3d 513 (2020).

With this procedural background and these legal principles in mind, we now set forth the following detailed facts, as stated in *Ferri* v. *Powell-Ferri*, supra, 317 Conn. 223, the trustees' declaratory judgment action, that are relevant to our resolution of this appeal. "Powell-Ferri filed an action for dissolution of her marriage to Ferri on October 26, 2010. . . . Ferri is the sole beneficiary of a trust created by his father, Paul John Ferri, Sr., in 1983 (1983 trust). . . .[4]

"The 1983 trust provides that, after Ferri attained the age of thirty-five, he would have the right to withdraw principal from the trust in increasing percentages depending on his age. In March, 2011, while the . . . dissolution action was pending, the [trustees] created a second trust whose sole beneficiary was Ferri (2011 trust). The [trustees] then distributed a substantial portion of the assets in the 1983 trust to the 2011 trust.[5]

"Unlike the terms of the 1983 trust, the terms of the 2011 trust do not allow Ferri to withdraw principal. Instead, under the terms of the 2011 trust, the [trustees] have all of the control and decision-making power as to whether Ferri will receive any of the trust income or assets.

"The trial court [in the trustees' declaratory judgment action] found that Ferri did not have a role in creating the 2011 trust or decanting any of the assets from the 1983 trust. The trial court further found that it was undisputed that Ferri took no action to recover the trust assets when Michael Ferri informed him of the creation of the 2011 trust and the decanting of the assets. The trial court characterized the reasoning behind this inaction as follows: '[Ferri] does not want to sue his family . . . and he believes the [trustees] are acting in his best interest.'

"After the [trustees] created the 2011 trust and transferred the assets from the 1983 trust to it, they instituted [a] declaratory judgment action seeking a ruling from the court that they had validly exercised their authority in transferring the assets and that Powell-Ferri had no interest in the 2011 trust assets. Powell-Ferri filed a counterclaim asserting claims of common-law and statutory fraud, civil conspiracy, and seeking a declaratory judgment. After the trial court struck counts alleging fraud and conspiracy, Powell-Ferri filed a second amended counterclaim, later revised, asserting claims of breach of fiduciary duty, breach of loyalty, tortious interference with an expectancy, and seeking a declaratory judgment, as well as [a] cross complaint . . . .

"Ferri filed a motion for summary judgment, claiming that the cross complaint failed to state a cause of action, and that even if it did set out a cause of action, there was no genuine issue of material fact to support Powell-Ferri's claims. Powell-Ferri opposed the motion on procedural grounds, namely that summary judgment is not

the proper means to test the legal sufficiency of a complaint, and on the merits.

"The trial court granted the motion for summary judgment, concluding that Powell-Ferri failed to state a cause of action. The trial court reasoned that, while marital partners have a fiduciary responsibility of full and open disclosure to each other, that responsibility does not extend to require spouses to recover assets belonging to the marital estate. The trial court observed that while spouses may not dissipate assets, 'at a minimum dissipation in the marital dissolution context requires financial misconduct involving marital assets, such as intentional waste or a selfish financial impropriety, coupled with a purpose unrelated to the marriage.' *Gershman* v. *Gershman*, 286 Conn. 341, 350–51, 943 A.2d 1091 (2008). The trial court concluded that there was no allegation that Ferri 'engaged in intentional waste or selfish impropriety.' The court further reasoned that if such allegations were present, '[t]here is no societal expectation embodied in the law which impels or compels a divorcing spouse to take affirmative steps to recover an asset removed from the marital estate by the action of a third party alone.' Accordingly, the court determined that the cause of action Powell-Ferri urged should not be recognized in Connecticut." (Footnotes added; footnote omitted.) *Ferri* v. *Powell-Ferri*, supra, 317 Conn. 225–27.[6]

Thereafter, Powell-Ferri appealed the trial court's judgment granting Ferri's motion for summary judgment. Our Supreme Court concluded that the cross complaint filed by Powell-Ferri failed to state a legally sufficient cause of action. Id., 238. The court affirmed the trial court's ruling, determining that "this state does not require a party to a dissolution action to take affirmative steps to recover marital assets taken by a third party . . . ." Id., 225.

In February, 2016, Ferri commenced this vexatious litigation action against Powell-Ferri and the Parrino defendants.[7] The parties cross moved for summary judgment. After oral argument on all of the summary judgment motions, the trial court granted the Parrino defendants' motion for summary judgment. The trial court denied Ferri's motions for summary judgment directed to the Parrino defendants and Powell-Ferri, respectively, as well as Powell-Ferri's motion for summary judgment. Ferri now appeals from the granting of the Parrino defendants' motion for summary judgment.

We must first address Ferri's claim that the court used the incorrect standard in determining whether the Parrino defendants had probable cause to prosecute the cross complaint. In its decision, the trial court stated that the probable cause standard in the context of a vexatious litigation claim against an attorney and/or a law firm is whether, "on the basis of the *facts* known by the law firm, a reasonable attorney familiar with

Connecticut law would believe he or she had probable cause to bring or pursue the litigation." (Emphasis in original; internal quotation marks omitted.) The trial court further stated that "[t]he standard is an objective one that is necessarily dependent on what the attorney knew when he or she initiated and/or continued the litigation." Ferri argues, however, that the court was required to determine whether the attorney had probable cause to commence and to pursue the litigation, not to determine whether the attorney reasonably believed he or she had probable cause.[8]

"[W]hether the court applied the correct legal standard is a question of law subject to plenary review. . . . When an incorrect legal standard is applied, the appropriate remedy is to reverse the judgment of the trial court and to remand the matter for further proceedings." (Citations omitted; internal quotation marks omitted.) *Deroy* v. *Estate of Baron*, 136 Conn. App. 123, 127, 43 A.3d 759 (2012).

"In the context of a claim for vexatious litigation, the defendant lacks probable cause if he [or she] lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." (Internal quotation marks omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 554, 944 A.2d 329 (2008). "[I]n *Falls Church Group, Ltd.* [v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 103, 912 A.2d 1019 (2007)], our Supreme Court rejected the claim that a claim for vexatious litigation against an attorney should be judged by a higher standard than the general objective standard, it nonetheless observed that the reasonable attorney is substituted for the reasonable person in [vexatious litigation] actions against attorneys . . . . The court explained that, with respect to vexatious litigation actions brought against attorneys, the proper probable cause inquiry is whether a reasonable attorney familiar with Connecticut law would believe that he or she had probable cause to bring the lawsuit. . . . [T]he standard that applies to attorneys is an objective one that is necessarily dependent on what an attorney knew when he or she initiated the lawsuit, and that probable cause may exist even if a suit lacks merit." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Tatoian* v. *Tyler*, supra, 194 Conn. App. 63.

Applying the standard to the present case, the trial court stated: "Relatedly, taking into account the facts known by Parrino and the theory pressed in the cross complaint at the trial and appellate levels, the court concludes that an attorney familiar with Connecticut law could reasonably believe that probable cause existed to initiate and prosecute the cross complaint and to pursue an appeal from the granting of Ferri's motion for summary judgment thereon. Thus, as a matter of law, the Parrino defendants had probable cause to initiate and prosecute the cross complaint at the trial

and appellate levels. There is no dispute of material fact as to the circumstances that gave rise to the existence of such probable cause." Accordingly, we conclude that the court applied the correct standard for determining whether the Parrino defendants had probable cause to prosecute the cross complaint.

Ferri also claims that, even if the court applied the correct standard, the court incorrectly determined that, as a matter of law, the Parrino defendants had probable cause to bring and prosecute the cross complaint. Ferri argues that this determination was improper because "[t]he trial court failed to consider the Parrino defendants' inability to recall any case law research performed, the failure to have any memoranda supporting the decision to file the cross complaint, the Parrino defendants' failure to consider the effect of *Gershman* [v. *Gershman*, supra, 286 Conn. 341], or the fact that the Parrino defendants' consideration of whether [Ferri] had an affirmative obligation to seek a return of trust assets from a third party was based solely on what they thought was common sense."

The following additional facts are relevant to our resolution of this claim. As previously stated, Powell-Ferri filed an action for a dissolution of her marriage in October, 2010. Upon service of process, Ferri was subject to the automatic orders contained in Practice Book § 25-5.[9] The Parrino defendants appeared on behalf of Powell-Ferri in both the dissolution action and the trustees' action and attempted to pursue various avenues to address the decanting of the 1983 trust. In the dissolution proceeding, the Parrino defendants filed a motion for contempt against Ferri alleging that he violated the court's automatic orders by not taking action after becoming aware of the decanting. The court denied the motion for contempt concluding that "[n]owhere in the automatic orders is there a duty to act. The duties throughout the automatic orders are injunctive in nature, prohibiting conduct that would disturb the status quo, essentially."[10] *Powell-Ferri* v. *Ferri*, Superior Court, judicial district of Middlesex, Docket No. FA-10-4014157-S (July 10, 2013) (56 Conn. L. Rptr. 473, 476).

In the trustees' action, the Parrino defendants filed an answer containing special defenses, counterclaims and the cross complaint underlying the vexatious litigation action, on January 4, 2012. The Parrino defendants filed an amended answer, special defenses, and a cross complaint on January 18, 2012.[11] In the cross complaint, the Parrino defendants alleged, on behalf of Powell-Ferri, that "by virtue of the dissolution action filed against him, Ferri had a duty to preserve marital assets, including those held in the 1983 trust; (2) Ferri was aware of the trustees' creation of a new trust with the intent to deprive Powell-Ferri of her equitable interest in trust assets and has taken no action to pursue his

right and obligation to seek the return of the trust assets to the 1983 Trust; and (3) Powell-Ferri has been harmed as a result thereof." (Internal quotation marks omitted.) The parties filed cross motions for summary judgment on the Parrino defendants' counterclaim. The trial court noted that, in opposing Ferri's motion, the Parrino defendants "advocated for the recognition of a new cause of action sounding in tort, as an extension of duties already existent between spouses, whereby a divorcing spouse would have a duty to prevent the dissipation of marital assets by a third party or undo the dissipation after the fact."

The trial court granted Ferri's motion and denied Powell-Ferri's motion. On appeal, our Supreme Court affirmed the trial court's judgment, declining to recognize a new cause of action. *Ferri* v. *Powell-Ferri*, supra, 317 Conn. 235. The court explained that "whether a party to a dissolution has a duty to act to preserve martial assets" is a question of "first impression." Id., 229. The court acknowledged that there is no " 'hard and fast test' " for the court to use in deciding to recognize a new cause of action but recognized its power to do so.[12] Id. The court explained the factors it examines in making this determination, namely, whether judicial sanctions are available and whether there are sufficient remedies to compensate the afflicted party, and whether other jurisdictions have recognized such a cause of action. Id. The court determined that Connecticut provides "significant remedies for when a party to a dissolution action has been found to dissipate assets." Id., 231. The court rejected Powell-Ferri's argument that our public policy in this state requires affirmative action, determining that our public policy only requires parties to attempt to maintain the status quo regarding marital assets. Id., 231–32. The court explained that dissipation requires a party to the dissolution proceeding to have committed some sort of financial misconduct and, if that determination is not made, Connecticut courts can consider the dissipation when fashioning asset distribution orders and alimony determinations in dissolution cases. Id., 232–33. The court determined that Powell-Ferri had not established dissipation because it was undisputed that Ferri did not have a role in creating the 2011 trust or decanting the assets of the 1983 trust; he only chose not to take action after the fact. Id., 233–34. The court explained that, even if a party believes his or her spouse had improperly removed assets from the marital estate, there were judicial remedies available to address this, including asking the court to exercise its discretion in considering those assets in fashioning orders and filing a motion for contempt if the party had fraudulently removed those assets. Id., 234. The court stated that a motion for contempt or a finding of dissipation were not suitable avenues, and, therefore, if the trustees were allowed to decant the assets in the trust, Powell-Ferri would have

to ask the trial court to consider the removed assets in creating the financial orders. Id., 235.

In the vexatious litigation action, the trial court determined that, on the basis of the facts known to the Parrino defendants, they pursued the motion for contempt and the cross complaint "in order to advance their client's interest in the assets of the 1983 trust, as a marital asset, that existed at the time of the commencement of the dissolution action." The court also determined that "an attorney familiar with Connecticut law could reasonably believe that probable cause existed to initiate and prosecute the cross complaint and to pursue an appeal from the granting of Ferri's motion for summary judgment thereon." The trial court further rejected Ferri's claims that (1) the cross complaint raised frivolous arguments because the action was later found to lack merit, (2) the Parrino defendants falsely alleged that Ferri knew of the trustees' intent to decant the 1983 trust prior to the decanting, and (3) the action lacked probable cause because no other jurisdiction has recognized such a cause of action.

The court correctly explained that an action that lacks merit does not necessitate the conclusion that it lacks probable cause or is frivolous.[13] See *Tatoian* v. *Tyler*, supra, 194 Conn. App. 59 ("We are mindful that [p]robable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in [vexatious litigation] must separately show lack of probable cause. . . . The lower threshold of probable cause allows attorneys and litigants to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . ." (Internal quotation marks omitted.)).

Regarding the claim of false allegations, the court determined that "the viability of the cross complaint did not depend on any false allegation that Ferri knew of the trustees' intention to decant the 1983 trust prior to the actual decanting." The cross complaint did not allege that Ferri failed to act prior to the decanting. The cross complaint alleged that Ferri failed to act after becoming aware of the trustees' decanting of the 1983 trust.[14] The court, therefore, properly rejected Ferri's contention that the Parrino defendants lacked probable cause because they knew that Ferri only learned about the decanting after the fact.

Finally, the trial court correctly determined that the lack of precedent in other jurisdictions did not render the Parrino defendants' cross complaint as being without probable cause. See *Tatoian* v. *Tyler*, supra, 194 Conn. App. 59 ("Were we to conclude . . . that a claim is unreasonable wherever the law would clearly hold for the other side, we could stifle the willingness of a lawyer to challenge established precedent in an effort to change the law. The vitality of our common law system is dependent upon the freedom of attorneys to

pursue novel, although potentially unsuccessful, legal theories." (Internal quotation marks omitted.)).

Our review of the extensive record in the interrelated cases and the briefs submitted on appeal demonstrate that the Parrino defendants zealously sought a remedy for their client. As our Supreme Court in the trustees' action explained, the available remedies in such a situation were a motion for contempt, arguing that Ferri had dissipated marital assets, and a request to the court to use its discretion to consider the removed assets when fashioning asset distribution orders. *Ferri* v. *Powell-Ferri*, supra, 317 Conn. 234. The Parrino defendants pursued all of those avenues to no avail.

The Parrino defendants also pursued another path in order to advance the law of our state to address situations in which a party to a dissolution proceeding takes no action to prevent others from removing assets from the marital estate to his benefit. When the trustees preemptively filed the declaratory judgment action seeking a court determination that Powell-Ferri had no right to the funds in the 2011 trust, the Parrino defendants filed the cross complaint at issue, asking the court to recognize a new cause of action that would have required a party to a dissolution proceeding to take action to prevent the removal of assets that would benefit him. When presented with the trustees' action, the Parrino defendants, accordingly, attempted to defend and vindicate their client's interests.

On the basis of the foregoing, we conclude that the trial court properly determined that the Parrino defendants had probable cause to bring and prosecute the cross complaint. The trial court, therefore, properly granted the Parrino defendants' motion for summary judgment.[15]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Ferri filed a six count complaint against the defendant Nancy Powell-Ferri and the Parrino defendants. The counts of the complaint that pertain to Powell-Ferri are still pending in the trial court. This court's jurisdiction is limited to appeals taken from final judgments, unless otherwise provided by law. See Practice Book § 61-1. "Our rules of practice, however, set forth certain circumstances under which a party may appeal from a judgment disposing of less than all of the counts of a complaint. Thus, a party may appeal if the partial judgment disposes of all causes of action against a particular party or parties; see Practice Book § 61-3." *Krausman* v. *Liberty Mutual Ins. Co.*, 195 Conn. App. 682, 687–88, 227 A.3d 91 (2020). Because judgment has entered as to all counts of the complaint pertaining to the Parrino defendants, we have jurisdiction to hear Ferri's appeal from the judgment entered on those counts.

[2] "Although the denial of a motion for summary judgment is not a final judgment and thus is not ordinarily appealable; see Practice Book § 4000 [now Practice Book § 61-1]; *Gurliacci* v. *Mayer*, 218 Conn. 531, 541 n.7, 590 A.2d 914 (1991); *Greengarden* v. *Kuhn*, 13 Conn. App. 550, 552, 537 A.2d 1043 (1988); the rationale for this rule is not applicable where both sides have filed motions for summary judgment and the court has granted one of them. *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 295 n.12, 596 A.2d 414 (1991). Thus, [an appellate court] may consider both of the summary judgment rulings contested by [an appellant] on appeal." (Internal quotation marks omitted.) *Misiti, LLC* v. *Travelers Property Casualty Co.*

*of America*, 132 Conn. App. 629, 630 n.2, 33 A.3d 783 (2011), aff'd, 308 Conn. 146, 61 A.3d 485 (2013).

[3] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

[4] The plaintiffs in the declaratory judgment action were the trustees of the 1983 trust. Michael Ferri, who is Ferri's brother and business partner, was one of the trustees involved in the action.

[5] Article II of the 1983 trust provides in relevant part: "My Trustee shall pay to Paul after he has attained the age of thirty-five (35) years such amounts of the principal as he may from time to time in writing request; provided however, that the aggregate amount of such payments of principal made before he attains the age of thirty-nine (39) years shall not exceed one-fourth (1/4) of the value of the principal of such property as determined on his thirty-fifth (35th) birthday; provided further that after Paul has attained the age of thirty-nine (39) years, the aggregate amount of such payments of principal made before he attains the age of forty-three (43) years shall not exceed one-half (1/2) of such value; and provided further that after Paul has attained the age of forty-three (43) years, the aggregate amount of such payments of principal made before he attains the age of forty-seven (47) years shall not exceed three-fourths (3/4) of such value. Such values shall be determined by my Trustee, whose determinations in this regard shall be final and binding on all concerned."

[6] In a subsequent appeal, our Supreme Court, relying on answers to certified questions that it had submitted to the Massachusetts Supreme Judicial Court, concluded that the trustees had the authority to create the second trust by decanting the assets from the first trust. See *Ferri* v. *Powell-Ferri*, 326 Conn. 438, 441–42, 165 A.3d 1137 (2017).

[7] As stated by the trial court, Ferri's action claimed "that the initiation and prosecution of the cross complaint in the trustees' action were vexatious. The operative complaint is Ferri's revised complaint dated March 10, 2017 . . . which sets forth the following counts: (1) count one—common-law vexatious litigation, as to Powell-Ferri; (2) count two—statutory vexatious litigation under . . . § 52-568, as to Powell-Ferri; (3) count three—common-law vexatious litigation, as to Parrino; (4) count four—statutory vexatious litigation under § 52-568, as to Parrino; (5) count five—common-law vexatious litigation, as to Nusbaum & Parrino [P.C.]; and (6) count six—statutory vexatious litigation under § 52-568, as to Nusbaum & Parrino [P.C.]."

[8] Ferri also claims that the court was required to analyze the question of probable cause in conjunction with the factors described in *ATC Partnership* v. *Coats North America Consolidated, Inc.*, 284 Conn. 537, 552–53, 935 A.2d 115 (2007), for recognizing a new cause of action: "When we acknowledge new causes of action, we also look to see if the judicial sanctions available are so ineffective as to warrant the recognition of a new cause of action. . . . To determine whether existing remedies are sufficient to compensate those who seek the recognition of a new cause of action, we first analyze the scope and applicability of the current remedies under the facts alleged by the plaintiff. . . . Finally, we are mindful of growing judicial receptivity to the new cause of action, but we remain acutely aware of relevant statutes and do not ignore the statement of public policy that such statutes represent." (Citations omitted.)

Ferri argues that because it is clear that the factors necessary to recognize a new cause of action were not met, it should have been clear to the Parrino defendants that they did not have probable cause to bring and prosecute the cross complaint. We note, however, that the court in *ATC Partnership* also recognized that there is "no hard and fast test that courts apply when determining whether to recognize new causes of action." Id., 552.

[9] Practice Book § 25-5 (b) provides in relevant part: "(b) In all cases involving a marriage or civil union, whether or not there are children: (1) Neither party shall sell, transfer, exchange, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, except in the usual course of business or for customary and usual household expenses or for reasonable attorney's fees in connection with this action. . . ."

[10] The court explained further: "The question of whether [the automatic] orders, under the facts of this case, require [Ferri] to take an affirmative

action to protect his interest in the 1983 [t]rust is a difficult one." *Powell-Ferri* v. *Ferri*, Superior Court, judicial district of Middlesex, Docket No. FA-10-4014157-S (July 10, 2013) (56 Conn. L. Rptr. 473, 475). Further, the court noted that "[w]hether any relief is available to [Powell-Ferri] under the facts of this case is not immediately clear. [Ferri] has taken no affirmative action to prevent the loss of this asset to the marital estate; and it is precisely the lack of affirmative action of which [Powell-Ferri] complains. Whether that meets the present definition of asset dissipation in the marital context is unclear. . . . '[C]ourts have traditionally recognized dissipation in the following paradigmatic contexts: gambling, support of a paramour, or the transfer of an asset to a third party for little or no consideration. Well defined contours of the doctrine are somewhat elusive, however, particularly in more factually ambiguous situations.' *Gershman* v. *Gershman*, [supra, 286 Conn 346–47]. . . . Whether inaction is tantamount to a 'factually ambiguous situation' alluded to in *Gershman* is not before the court presently. That shall wait until either the final hearing or a motion addressing the same." *Powell-Ferri* v. *Ferri*, supra, 56 Conn. L. Rptr. 473, 476.

[11] The Parrino defendants alleged five special defenses: (1) conspiracy; (2) removal of marital assets; (3) irrevocable trust; (4) unclean hands; and (5) violation of public policy. The Parrino defendants raised four counterclaims: (1) common-law fraud; (2) statutory fraudulent transfer; (3) civil conspiracy; and (4) declaratory judgment.

[12] Our Supreme Court has explained: "We do have the inherent authority, pursuant to the state constitution, to create new causes of action. *Binette* v. *Sabo*, 244 Conn. 23, 34, 710 A.2d 688 (1998). Moreover, it is beyond dispute that we have the power to recognize new tort causes of action, whether derived from a statutory provision or rooted in the common law. *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 235, 905 A.2d 1165 (2006); see, e.g., *Mead* v. *Burns*, 199 Conn. 651, 663, 509 A.2d 11 (1986) (recognizing action for damages under Connecticut Unfair Trade Practices Act for violations of Connecticut Unfair Insurance Practices Act); *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 480, 427 A.2d 385 (1980) (recognizing tort of wrongful discharge); *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 307, 93 A.2d 292 (1952) (recognizing torts of intentional and negligent infliction of emotional distress)." *ATC Partnership* v. *Coats North America Consolidated, Inc.*, 284 Conn. 537, 552–53, 935 A.2d 115 (2007).

[13] Furthermore, rule 3.1 of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which *includes a good faith argument for an extension, modification or reversal of existing law*. . . ." (Emphasis added.) The commentary to this rule clarifies as follows: "The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.

"The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." Rules of Professional Conduct 3.1, commentary.

[14] To be clear, the Parrino defendants alleged, as special defenses, that Ferri was aware of the trustees' intent to decant the 1983 trust before the 2011 trust was created and that the actions were a part of a conspiracy to keep those assets away from Powell-Ferri in the dissolution proceeding. Those allegations were stricken by the trial court, *Munro, J.*, in the trustees' action. The trial court in the vexatious litigation action addressed this claim, stating that "Ferri's counsel acknowledged during oral argument before this court that such special defense against the trustees does not serve as a basis for Ferri's vexatious litigation claims against the defendants in the present case." We agree with the trial court that claims alleged in special

defenses are not relevant to this vexatious litigation suit brought on the basis of the Parrino defendants' filing and prosecution of the cross complaint.

[15] As a result of this determination, we need not address Ferri's remaining claims for the following reasons. Ferri claims that the trial court erred in finding that the Parrino defendants did not act with malice. Although malice is an element of a common-law vexatious litigation cause of action, it is not an element of the statutory vexatious litigation cause of action; it is only a multiplier of damages. Probable cause is an element of both. Because we determine that there was no want of probable cause, we do not need to consider whether the trial court properly determined a want of malice. See *Schaeppi* v. *Unifund CCR Partners*, 161 Conn. App. 35, 36 n.1, 127 A.3d 304, cert. denied, 320 Conn. 909, 128 A.3d 953 (2015).

Ferri also claims that the trial court erred in determining that the Parrino defendants did not violate rule 3.1 of the Rules of Professional Conduct. A violation of the Rules of Professional Conduct does not, in itself, create a private cause of action. See Rules of Professional Conduct, preamble ("[v]iolation of a [r]ule should not itself give rise to a cause of action against a lawyer nor should it create any presumption that a legal duty has been breached"); *Perugini* v. *Giuliano*, 148 Conn. App. 861, 879, 89 A.3d 358 (2014) ("the Rules of Professional Conduct do not give rise to a private cause of action"). Our review of the trial court record in the vexatious litigation action demonstrates that Ferri raised this argument, not as a separate cause of action, but as support for his claim that the Parrino defendants lacked probable cause to maintain the cross complaint. As we have already concluded that the trial court did not err in determining that the Parrino defendants had probable cause, we need not consider this claim in depth.

Finally, in light of our determination that the trial court properly granted the Parrino defendants' motion for summary judgment, it is not necessary to address Ferri's claim that the court should have granted his motion and rendered judgment in his favor.

———————————————