******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HOSSIEN KAZEMI ET AL. *v.*
LAURENCE ALLEN ET AL.
(AC 44377)

Prescott, Suarez and Palmer, Js.

*Syllabus*

The plaintiffs sought to recover damages from the defendants, A and G Co., for, inter alia, vexatious litigation, in connection with a prior quiet title action regarding a disputed area of real property. A acquired a parcel of real property in 1996, and, in 2014, the plaintiffs acquired the adjoining property. Subsequently, the defendants notified the plaintiffs of their claim to a strip of land along the northern boundary of the plaintiffs' property. In October, 2015, the plaintiffs filed on the land records a notice of intent to dispute and prevent the defendants from acquiring the right to possess the disputed area. The plaintiffs then commenced the action to quiet title to their property and to obtain a declaration that the defendants did not have an interest in the area. In response, the defendants asserted a two count counterclaim sounding in adverse possession and trespass, alleging that they had been in possession of the disputed portion of the plaintiffs' property for more than fifteen years prior to the filing of notice on the land records. Following a trial, the trial court found for the plaintiffs. The plaintiffs then filed the underlying action in relation to the defendants' counterclaim, and, following trial, the court found that the plaintiffs successfully had demonstrated that the defendants lacked probable cause to bring the counterclaim and that the defendants had failed to prove their defense of advice of counsel. On the defendants' appeal to this court, *held*:

1. This court determined that the defendants properly appealed from a final judgment in light of the fact that the trial court, although it did not explicitly address the plaintiffs' trespass count in its decision, implicitly disposed of that count; according to the testimony at trial, the plaintiffs incurred expenses to remove structures that had been placed on the property following judgment in the action to quiet title and the court awarded the plaintiffs costs to remove those structures, such that the court implicitly found in favor of the plaintiffs on their count alleging a trespass.

2. The trial court did not err when it determined that the defendants lacked probable cause to bring the adverse possession and trespass counts of their counterclaim, there having been a dearth of evidence to support their claims: the court properly determined, on the basis of the evidence presented at trial, that the defendants did not have a reasonable good faith belief in the existence of facts essential to bring the adverse possession claim with respect to certain encroachments, their use of hedges, a retaining wall and pillar, a mailbox, and a driveway, because, although A testified that the alleged encroachments on which their adverse possession claims were based existed when he purchased the property in 1996, certain surveys and photographs admitted into evidence showed either that no such encroachments existed on various dates following the purchase or that the encroachments were on the defendants' property and not the plaintiffs' property, and the trial court found A's testimony not credible and inconsistent; moreover, because the court did not err in finding that the defendants lacked probable cause to believe that they had acquired the property by adverse possession, the defendants also lacked probable cause to assert their trespass claim with respect to the disputed property over which they had no possessory right.

3. The trial court properly concluded that the defendants did not establish their advice of counsel defense, as evidence in the record supported the court's findings that the defendants withheld and misrepresented material facts to counsel, limited counsel's preparation, acted to prevent counsel from learning adverse material facts by preventing counsel from independently investigating to corroborate their version of events, and, thus, their reliance on counsel's advice necessarily could not have been made in good faith.

4. The trial court properly inferred that the defendants acted with malice,

that court having properly determined that the defendants lacked proba-
ble cause to bring their claims.

Argued January 4—officially released July 26, 2022

*Procedural History*

Action, inter alia, to recover damages for vexatious
litigation, and for other relief, brought to the Superior
Court in the judicial district of Stamford-Norwalk,
where the matter was tried to the court, *Hon. Edward
T. Krumeich II*, judge trial referee; judgment for the
plaintiffs, from which the defendants appealed to this
court. *Affirmed.*

*Thomas B. Noonan*, with whom were *Douglas S.
Skalka* and, on the brief, *Dennis M. Carnelli*, for the
appellants (defendants).

*Michael J. Leventhal*, for the appellees (plaintiffs).

*Opinion*

SUAREZ, J. In this vexatious litigation action, the defendants, Lawrence Allen (Allen) and Green Tree Estate Association, Inc. (Green Tree), appeal from the judgment of the trial court in favor of the plaintiffs, Hossien Kazemi and Mahvash Mirzai. On appeal, the defendants claim that the trial court improperly (1) determined that the plaintiffs established that the defendants lacked probable cause to bring the claims for adverse possession and trespass in their counterclaim, (2) denied the defendants' motion for a directed judgement, (3) determined that the defendants failed to establish their advice of counsel defense, and (4) found that the defendants acted with malice. We affirm the judgment of the trial court.

The following facts, as found by the court or as undisputed in the record, and procedural history are relevant to our resolution of this appeal. The defendants are the owners of real property known as 43 Maple Avenue (43 Maple) in Greenwich. The property was first acquired by Allen on October 16, 1996, and was later converted into a four unit condominium on December 5, 1998. Allen owns the condominium units, and Green Tree owns the common areas. On March 10, 2014, the plaintiffs acquired real property known as 33 Maple Avenue (33 Maple), the adjoining property situated to the south of 43 Maple. On September 14, 2015, John Tesei, Allen's attorney, sent a letter to the plaintiffs, on behalf of the owners of 43 Maple, in which he notified the plaintiffs of the defendants' claim to a strip of land along the northern boundary of 33 Maple. In the letter, Tesei indicated that the claim was based on the defendants' adverse use of the disputed area for more than fifteen years by maintenance of shrubs, a curbed driveway, and a stone pillar. In response, on October 20, 2015, the plaintiffs served on the defendants, pursuant to General Statutes § 52-575,[1] a notice of intent to dispute and prevent the defendants from acquiring the right to possess the disputed area. The notice was recorded on the land records on October 22, 2015.

Immediately thereafter, the plaintiffs commenced an action to quiet title to 33 Maple pursuant to General Statutes § 47-31 and to obtain a declaration that the defendants did not have an interest in the disputed area (prior action). In response, the defendants asserted a statute of limitations special defense under § 52-575 (a) and a two count counterclaim sounding in adverse possession of the disputed area and trespass. The defendants alleged that they had been in possession of the disputed portion of 33 Maple for more than fifteen years prior to October 22, 2015, the date on which the notice had been recorded. In their answer, the defendants alleged that several acts gave rise to adverse possession of the disputed property, including the defendants' maintenance of a driveway, a chain link fence, a stone

pillar, certain shrubs, bushes and plants next to the stone pillar, and a mailbox. The defendants' trespass counterclaim alleged that the plaintiffs' workers had "destroyed the fence and mailbox . . . ." The defendants filed an amended counterclaim on May 2, 2017, which alleged the maintenance of a "brick pillar" along with the plants and mailbox. The amended counterclaim also alleged that the chain link fence was just a demarcation of the disputed area and it no longer alleged that the fence was maintained by the defendants. The amended trespass counterclaim alleged that the plaintiffs' agents entered the disputed area to replace the fence and that they "removed, dismantled, and/or otherwise displaced the mailbox . . . ."

The prior action was tried before the court, *Hon. David R. Tobin*, judge trial referee, on April 18 and 20, 2018. The court issued a memorandum of decision dated June 13, 2018, in which it quieted title to 33 Maple in favor of the plaintiffs and rejected the defendants' special defense and counterclaim of adverse possession. The court, after examining the evidence adduced at trial, concluded that the only evidence supporting the adverse possession counterclaim was Allen's uncorroborated testimony, which was insufficient to sustain the defendants' burden of proof. The court did not address the defendants' trespass counterclaim in its memorandum of decision because that claim was withdrawn by the defendants at trial in the prior action after they had rested their case.

Thereafter, on September 12, 2018, the plaintiffs filed the action underlying the present appeal. The complaint alleged causes of action against the defendants sounding in slander of title,[2] vexatious litigation, vexatious litigation with malicious intent, and trespass. The vexatious litigation claims[3] against the defendants related to their counterclaim alleging adverse possession and trespass that they had raised in the prior action. In their defense against the vexatious litigation claims, the defendants attempted to demonstrate that they had brought their counterclaim in good faith and on the advice of counsel.

Following a trial to the court, *Hon. Edward T. Krumeich II*, judge trial referee, the court found that the plaintiffs successfully had demonstrated that the defendants lacked probable cause to bring the counterclaim alleging adverse possession and trespass and that the defendants had failed to prove their advice of counsel defense. In its memorandum of decision, the court found the following facts: "[The] defendants have demonstrated that they consulted with impartial counsel who advised them they had viable claims. . . . The credible evidence established there was not full and fair disclosure of material facts to counsel. Allen withheld and misrepresented material facts to counsel, limited counsel's preparation and acted to prevent counsel

from learning adverse material facts by preventing counsel from independently investigating the defense and claims to corroborate his version of events. Allen did not rely on counsel's advice but, rather, manipulated counsel to accept his false version of events and acted in bad faith in prosecuting the limitations defense and [both counts of] the [counterclaim].

"The court finds Allen's testimony lacked credibility in many respects. Allen testified that the alleged encroachments existed when he purchased 43 Maple . . . in 1996. The 1998 survey belies that claim because it shows no encroachments and, indeed, shows neither the pillar and wall nor the mailbox shed. The 2006 survey also omits the mail shed but does show a new encroaching stone wall without a pillar where the 1998 survey showed a nonencroaching u-shaped structure. Allen was disingenuous when he testified in this case he was not familiar with surveys yet claimed the 1998 survey was inaccurate, as he did in the trial before Judge Tobin. The court rejects Allen's interpretation of the 1998 survey that the u-shaped structure shown is the encroaching wall depicted on the 2006 survey. The absence of a pillar is also striking because the 1998 survey calls out a pillar at another location. Allen's assertion that the surveys are not accurate rings hollow and is contradicted by other evidence that corroborates the wall and pillar and the mail shed were constructed after the 1998 survey.

"The amended counterclaim's change of allegations from a stone to a brick pillar was significant. Allen testified that the pillar was brick when he purchased the property in 1996 and was subsequently clad in fieldstone as part of the condominium renovations. No brick was shown in the video of the pillar's demolition and the demolition contractor testified the workers found no brick when the fieldstone pillar was demolished in 2019, along with the encroaching fieldstone, rubble, and mortar wall to which it was attached. The court finds that the encroaching wall and pillar were constructed sometime after 1996 and that Allen's testimony to the contrary in both trials was false. The court also finds that the stone pillar was added later and the testimony by Allen that there was originally a brick pillar in 1996 was fabricated to explain evidence that the pillar was formed of stone when the wall was extended and became an encroachment sometime after the 1998 survey.

"Hedges are shown on both the 1998 and 2006 surveys on 43 Maple . . . at the location Allen testified there were shrubs and other plantings in 1996 that encroached on 33 Maple . . . which were maintained by [the] defendants' landscapers. The only photograph of the hedges shows tall landscaped hedges that appear to be on [the] defendants' side of the property line with low ground cover beneath, possibly pachysandra or ivy

also depicted nearby. No shrubs or other plantings are shown in the photograph. Although the court credits that [the] defendants' landscapers maintained the hedge and ground cover beneath, there is no proof of any encroachment by the hedge and ground cover on 33 Maple . . . that existed in 1996, as Allen testified.[4]

"The mailbox shed was added sometime after the condominium conversion in December, 1998, presumably as part of the condominium construction project. The credible evidence is that the shed was originally placed on a concrete pad located on 43 Maple . . . and moved to a new location for the convenience of the postal service. The photograph of the mail shed and the concrete pad appear to show both to be on 43 Maple. [In the prior action] Judge Tobin could not find the shed encroached on 33 Maple for the requisite period.

"Allen went to great lengths to keep his counsel in the dark about material facts and surveys that contradicted his version of events and stymied their efforts to investigate his narrative. All three counsel involved relied on information supplied by Allen as to the alleged encroachments and their duration when advising him as to the merits of his defense and claims. The only source of information to counsel about the encroachments and their duration came from Allen, who kept [Attorney David W.] Rubin, and especially [Attorney Michael] Powers, on a tight leash ostensibly to keep them from overcharging him but also to prevent them from learning about Allen's deception. Allen would not allow Rubin to interview witnesses he wanted to interview and accused both his trial counsel of trying to run up their fees when they recommended doing more than the minimum Allen authorized to prepare and defend the case. Attorney Rubin twice moved to withdraw as counsel, in part, because he disagreed with Allen's efforts to prevent him from investigating the case to corroborate what Allen had told him and because Allen did not take counsel's advice as to how the case should be prepared, defended and prosecuted. Allen's interrogatory responses to the first set of interrogatories, prepared by Rubin's associate and certified as true by Allen, stated that the stone pillar was located on the property when he purchased [it] in 1996. In his responses to the second set of interrogatories, after amendment of the answer, Allen swore there was a 'brick' pillar there when he purchased the property in 1996. Neither is supported by the objective evidence adduced at trial, notably the 1998 and 2006 surveys and the evidence related to demolition of the pillar in 2019. Allen did not supply counsel with the 1998 and 2006 surveys done by his surveyor, which turned out to be pivotal evidence at trial in the prior action. The 2006 survey was the only objective evidence that there was any encroachment at all and forced counsel to rely on Allen's anecdotal evidence that the encroachments existed for the requisite period.

"Rubin wanted to interview and/or depose Nakolinkova Bliznakova in San Francisco but Allen would not permit him to do so, citing the expense. At trial in the prior action her testimony as a rebuttal witness was devastating to [the] defendants. She testified she was the granddaughter of the owners of 33 Maple . . . and grantor on the deed to [the] plaintiffs. She testified the hedge was planted by her grandfather and was maintained by her family. She testified the chain link fence was erected by her grandfather to keep his dogs from leaving the property. Judge Tobin found the fence was never intended to demarcate the boundary between 43 Maple and 33 Maple and the hedge was located 'entirely, or in large measure,' north of both the fence and the property line.

"[Powers] replaced Rubin as defense counsel on July 27, 2017, and he tried the case in the prior action. When he was retained, he assured Allen he would not need to conduct an extensive investigation or interview and/or depose fact witnesses but would rely on the testimony of Allen, his wife Michelle Allen, and one of their landscapers. Little or no activity occurred in the case as reflected in the court's file until the trial date approached and then there was a flurry of activity that [appears] calculated to delay trial and encourage settlement.

"On April 18, 2018, the first day of trial before Judge Tobin, [the] plaintiffs rested after brief testimony by Kazemi. Allen testified the remainder of the day to conclusion. An e-mail from Allen to . . . Powers on Monday, April 16, 2018, two days before trial, listed three witnesses, [Allen, Michelle Allen] and a landscaper. Those were the only witnesses [the] defendants intended to call at trial. Apparently, by the evening of the first trial day, Allen became concerned [the] defendants had not met their burden of proof to the satisfaction of Judge Tobin. That same day, on Wednesday, April 18, 2018, at 6:44 p.m., Allen sent Powers an e-mail stating that 'I have the general contractor and architect willing to sign attestation letters' as to construction of the mailbox and fieldstone cladding of the existing retaining wall. At 8:41 p.m. later that same day, Allen sent Powers an attestation letter he had drafted. At 9:30 a.m., the next day, April 19, 2018, the day before the second and final day of trial, Allen sent Powers proposed attestation letters he had drafted for signature by Michael Blanc . . . the architect, and Mark Mantione . . . the general contractor on the condominium conversion project and Joann P. Erb, a realtor involved in marketing Allen's properties. The attestation letters drafted by Allen and later signed by the contractor, architect, and realtor were addressed to Judge Tobin and attested to certain facts relating to the mailbox, wall, and pillar and landscaping at issue. These unsworn letters were never admitted into evidence and the signatories were never

witnesses at trial of the prior action. Their significance to the claims in this action is as evidence that Allen knew the identity of the architect, contractor, and realtor and knew they had material information about the subject property that was kept from his counsel, who in the ordinary course at least would have interviewed them and reviewed their files in preparation of the case. Allen had claimed at his deposition on May 9, 2017, he could not recall the name of the contractor who had worked on the pillar. If that was true initially, which is doubtful, it clearly was not true later as the case proceeded toward trial.

"Some of the information in the attestation letters is not helpful to [the] defendants in this case. For example, Mantione attested his crew poured the slab and built the mail shed in November, 1998, and then, '[i]n or about January, 1999, my crew moved the mailbox approximately 3 [to] 5 feet to the left of the cement slab inside the hedges, at the request of the Greenwich Post Office.' That is the position shown in the photograph of the mail shed and concrete pad, which appear to be on 43 Maple, not 33 Maple, north of the hedge the surveys place on [the] defendants' property. Mantione's letter also attests that in or about March, 1999, his crew 'extended the height at the beginning of the retaining wall to form a small pillar.' If true, the pillar did not exist in 1996, when Allen testified it existed. Mantione backtracked when he testified in this action that he clad an existing pillar with fieldstone, presumably to bolster Allen's testimony about an existing brick pillar, but that testimony is not credible and is contradicted by the surveys, the credible testimony of the demolition contractor and the pillar demolition video. The encroaching pillar was constructed of fieldstone when the section of the stone and rubble wall was extended and then encroached on 33 Maple . . . as shown on the 2006 survey.

"Blanc, the architect, signed an attestation letter dated April 17, 2018, the day before the trial started, which contradicted Mantione by stating the 'mailbox stand . . . was not constructed by one of the contractors or by the present owners of 43 Maple . . . .' Blanc corroborated Mantione's letter, and contradicted Mantione's testimony at trial in this case and the prior case, by attesting that, in or about March, 1999, the renovation work '[e]xtended height at the beginning of the retaining wall to form a small pillar.' This contradicts Allen's testimony in both trials that the pillar existed in 1996. The 1998 survey does not show an existing retaining wall at that location, while the 2006 survey shows an encroaching wall there, which is proof the wall was not merely heightened, as Blanc and Mantione attested, but rather it was constructed sometime between December 4, 1998, and August 18, 2006, the respective survey dates. Allen's testimony that there had been no improvements since 1998 was false.

"Neither Rubin nor Powers had the benefit of interviewing Blanc or Mantione or reviewing their files. Neither counsel was provided with their names until Powers was presented with the attestation letters during trial. The attestation letters were not admissible; the realtor letter was offered but not admitted as hearsay by Judge Tobin. [The] defendants did not offer the architect and contractor attestation letters. Powers was not informed of the contractor, architect, and realtor as potential witnesses until shortly before the second day of trial. Rubin never knew their identity. Allen knew who they were, knew that the architect and contractor and their files would be a likely source of material information and yet he withheld their identity from his counsel.

"Also on April 19, 2018, at 10:29 p.m., Allen informed Powers that his wife found new evidence, including a 1997 survey that showed the wall and overhead photos of 43 Maple . . . in 1997, 2003 and 2006. By e-mail of same date at 10:51 p.m., Allen sent Powers the certified attestation letters and a 1997 survey by S.E. Minor and stated he would bring a 2005 survey by Ahneman to court the next day. The 2005 survey showed an encroaching 'retaining wall' as of March, 2005, according to Judge Tobin's findings. Neither counsel had benefit of these late produced documents when they advised Allen of the viability of the defense and claims.

"The significance of the late provided evidence and the attestation letters was that information which should have been available to counsel was not provided to them by Allen so any advice counsel gave was not informed by what counsel would have learned from the missing evidence and lost opportunities to investigate. The court does not believe Allen's testimony that he wanted Mantione, Blanc and [Erb] to testify at [the] trial of the prior action but Powers decided not to call them because he had missed the deadline for listing them as witnesses or because they had not been deposed. Instead, the court credits Powers' testimony Allen did not want them to testify. Allen's apparent strategy for preparing the attestation letters was to avoid live testimony and use written statements to control the information to be given to Judge Tobin and to avoid cross-examination that would contradict his version of events.

"Allen's strategy was to defend the prior action based on the false narrative that there were encroachments on 33 Maple . . . that existed in 1996 when Allen purchased 43 Maple . . . . He compounded this by fabricating a trespass claim that was bereft of evidence and was withdrawn at trial of the prior action after [the] defendants had rested their case. Allen believed that Kazemi was a real estate developer who planned to build a new house and flip the property. The Tesei letter

and later the special defense and [counterclaim] were designed to give him leverage for concessions as to the disputed strip and to keep any encroaching wall and pillar, hedge and plantings. His approach to the litigation was to forestall [the] plaintiffs' efforts to enforce their title to 33 Maple . . . while keeping [the] defendants' expenses low with the expectation of settlement. When trial loomed, he had his attorney file frivolous motions with the hope of bringing [the] plaintiffs to the bargaining table and avoiding trial.[5] When he could not avoid trial, and indeed was in the midst of trial, Allen manufactured evidence that he sprung on his attorney at the last minute. He presented testimony by two of these witnesses, Mantione and [Erb], at trial in this case. Mantione's testimony was not credible as it related to the wall and pillar, which, he testified, was existing and in need of repair and his crew merely repaired and clad in fieldstone. It is clear from the surveys that the portion of the wall that encroached on 33 Maple . . . was constructed after December 4, 1998, but before August 18, 2006. Thus, the encroaching wall and pillar were either new when Mantione came onto the project, having been constructed by his predecessor contractor, or, more likely, Mantione constructed the wall or pillar, which is more consistent with his attestation letter that states his crew formed the pillar. Either way, these facts contradict Allen's testimony that the pillar and wall existed when he bought the property in 1996. The court credits [Erb's] testimony that [the] defendants maintained the hedge and ground cover shown in the photograph, but she started representing [the] defendants in 2002 and could not attest to the more than fifteen year duration of maintenance claimed by [the] defendants. In any event, neither Mantione nor [Erb] testified in the trial before Judge Tobin, nor did the architect Blanc, all of whom were known to and could have been called by Allen. Powers testified Allen did not want them to come to court and would not pay for subpoenas.

"Allen's false and deceptive misconduct in the prior action provides graphic evidence of his lack of probable cause, bad faith and malice. . . . Allen's false testimony in this case, and in the prior action, confirms his willingness to dissemble if he believes perjury and false pleading would advance what he perceives to be his interests. [The] defendants' defense and [counterclaim] in the prior action were grounded in the fiction that there were encroachments on 33 Maple . . . that existed when Allen purchased 43 Maple . . . in 1996. The trespass claim was based on an alleged event that did not happen and fictional possessory rights. Allen did not have probable cause to assert the defense and [both counts of the counterclaim] and did so maliciously to obtain leverage over [the] plaintiffs, who he believed planned to flip the property for sale and would be amenable to settlement on Allen's terms." (Citations omitted; footnotes in original; footnotes omitted.)

After finding that the plaintiffs had "proven their vexatious litigation claim by a fair preponderance of the evidence," the court awarded them compensatory damages, which included "demolition costs of $304.69," "surveying costs of $505," and "attorney's fees in the prior action of $58,680.50 . . . ." Because the court found both a lack of probable cause and that the defendants acted with malice, the court awarded the plaintiffs treble damages under General Statues § 52-568, for a total damages award of $178,470.57. This appeal followed. Additional facts will be set forth as necessary.

I

As a preliminary matter, we address whether the defendants appealed from a final judgment in light of the fact that the court, in its decision, did not explicitly address the plaintiffs' trespass count. "[E]ven where the appellee fails to bring to our attention the lack of a final judgment, either by motion to dismiss or in its brief, or at oral argument, we must, nonetheless, act sua sponte." (Internal quotation marks omitted.) *Mase* v. *Riverview Realty Associates, LLC*, 208 Conn. App. 719, 726, 265 A.3d 944 (2021). As a result of our final judgment concerns, we notified the parties that "[a]t oral argument, counsel of record . . . [should] be prepared to address whether the defendants appealed from a final judgment given that the trial court's October 26, 2020 memorandum of decision does not expressly dispose of the fourth count of the plaintiffs' complaint alleging a cause of action for trespass."

The right of appeal is purely statutory, and General Statutes § 52-263[6] provides that parties may appeal to this court from the final judgment of the trial court. See *In re Teagan K.-O.*, 335 Conn. 745, 754, 242 A.3d 59 (2020) ("a final judgment . . . is a statutory prerequisite to appellate jurisdiction" (citations omitted)). "[L]ack of a final judgment is a jurisdictional defect that mandates dismissal." (Internal quotation marks omitted.) *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 686, 899 A.2d 586 (2006).

"When judgment has been rendered on an entire complaint . . . such judgment shall constitute a final judgment. . . . As a general rule, however, a judgment that disposes of only a part of a complaint is not final, unless it disposes of all of the causes of action against the appellant." (Citation omitted; internal quotation marks omitted.) *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 717, 183 A.3d 1164 (2018). "In assessing whether a judgment disposes of all of the causes of action against a party, this court has recognized that the trial court's failure to expressly dispose of all of the counts in the judgment itself will not necessarily render the judgment not final. Rather, the reviewing court looks to the complaint and the memorandum of decision to determine whether the trial court explicitly

or implicitly disposed of each count." (Emphasis omitted.) Id., 718.

In the present case, the court's October 26, 2020 memorandum of decision clearly disposed of the plaintiffs' vexatious litigation claims. The court explicitly found that the defendants lacked probable cause to bring both counts of their counterclaim for adverse possession and trespass and, as a result, the plaintiffs had proven their vexatious litigation claims. The court also found that the defendants had acted with malice. The court did not, however, expressly analyze or render judgment with respect to the plaintiffs' count alleging trespass, which raises the issue of whether the court rendered a final judgment. We conclude, nevertheless, that the court implicitly disposed of the plaintiffs' trespass count and, thus, it rendered a final judgment.

The plaintiffs' claims against the defendants included vexatious litigation, vexatious litigation with malicious intent, and trespass. In their complaint, the plaintiffs sought as relief, inter alia, "[d]amages in the amount required to restore and repair 33 Maple after the defendants' trespass." Generally, "[w]hen injury to property resulting from a trespass is remedial by restoration or repair . . . the measure o[f] damages is the cost of restoration and repair." (Internal quotation marks omitted.) *Argentinis* v. *Fortuna*, 134 Conn. App. 538, 556, 39 A.3d 1207 (2012). In contrast, "[t]he purpose of [an] action [for vexatious litigation] is to compensate a wronged individual for damage to his reputation and to reimburse him for the expense of defending against the unwarranted action." (Internal quotation marks omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 554, 944 A.2d 329 (2008).

According to the testimony at trial, the plaintiffs, after prevailing in the prior action, "incur[red] expenses to remove structures that had been placed on [the] property," including $505 to have "surveyors . . . come and stake out the property correctly" and $304.69 "for demolition of the wall . . . ." Although the court did not explicitly address the trespass cause of action in its memorandum of decision, the court awarded the plaintiffs "demolition costs of $304.69" and "surveying costs of $505 . . . ." Taking into consideration the complaint, the memorandum of decision, and the award of expenses incurred to restore and replace the property, we conclude that the court implicitly found in favor of the plaintiffs on their count alleging a trespass. Because we have determined that the court implicitly disposed of the plaintiffs' count alleging a trespass, it follows that the court disposed of all of the counts in the plaintiffs' complaint, and, therefore, we conclude that the court rendered a final judgment.

## II

On appeal, the defendants first claim that the court

erred in concluding that the plaintiffs established, for purposes of the vexatious litigation claims,[7] a lack of probable cause related to the defendants' counterclaim in the prior action alleging claims for adverse possession and trespass. Specifically, the defendants argue that they "alleged facts and presented a viable claim for adverse possession in the [prior] action with respect to the [use of the] disputed property due to [the] defendants' having, for a period of not less than fifteen years, maintained the hedges and grounds up to the chainlink fence, erected the retaining wall and pillar, erected and placed the mailbox shed, and placed the Belgian block along the driveway." (Footnote omitted.) The defendants, therefore, argue that there was probable cause to bring the claim of adverse possession.[8] The defendants also argue that they had probable cause to bring the counterclaim of trespass because "[t]he evidence . . . demonstrates that [the] defendants had a possessory right to [the disputed area] based on adverse possession and that [the] plaintiffs entered this area and moved the mailbox without permission and constructed a fence in the disputed [area]."[9]

We begin by setting forth the legal principles relevant to our resolution of this claim. "In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute. . . . [T]o establish a claim for vexatious litigation at common law, one must prove want of probable cause, malice and a termination of suit in the plaintiff's favor." (Citation omitted; internal quotation marks omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, supra, 286 Conn. 554. "For purposes of a vexatious suit action, [t]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of. . . . Thus, in the context of a vexatious suit action, the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." (Citations omitted; internal quotation marks omitted.) *DeLaurentis* v. *New Haven*, 220 Conn. 225, 256, 597 A.2d 807 (1991).

"We are mindful that [p]robable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in [vexatious litigation] must separately show lack of probable cause. . . . The lower threshold of probable cause allows attorneys and litigants to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . . Were we to conclude . . . that a claim is unreasonable wherever the law

would clearly hold for the other side, we could stifle the willingness of a lawyer to challenge established precedent in an effort to change the law. The vitality of our common law system is dependent upon the freedom of attorneys to pursue novel, although potentially unsuccessful, legal theories." (Internal quotation marks omitted.) *Tatoian* v. *Tyler*, 194 Conn. App. 1, 59, 220 A.3d 802 (2019), cert. denied, 334 Conn. 919, 222 A.3d 513 (2020).

"A statutory action for vexatious litigation under . . . § 52-568 . . . differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages. In either type of action, however, [t]he existence of probable cause is an absolute protection against an action for malicious prosecution . . . ." (Footnote omitted; internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 200 Conn. App. 63, 68, 239 A.3d 1216, cert. denied, 335 Conn. 970, 240 A.3d 285 (2020).

We next set forth the standard of review for this claim. "[W]hat facts, and whether particular facts, constitute probable cause is always a question of law. . . . Accordingly, our review is plenary." (Internal quotation marks omitted.) Id. When our review is plenary, "we must decide whether [the court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Barber* v. *Barber*, 193 Conn. App. 190, 196, 219 A.3d 378 (2019).

We first address the defendants' challenge to the factual findings on which the court relied when it determined that the defendants lacked probable cause to bring the adverse possession claim. When an appellant challenges the factual findings on which the court's finding of a lack of probable cause is based, we apply the clearly erroneous standard of review. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Casiraghi* v. *Casiraghi*, 200 Conn. App. 771, 788, 241 A.3d 717 (2020). "Because factual findings and credibility determinations are squarely within the trial court's purview, we afford them great deference. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Lyme Land Conservation Trust, Inc.* v. *Platner*, 325 Conn. 737, 755, 159 A.3d 666 (2017).

In the present case, the defendants argue that the court erred in finding that the hedges do not encroach

onto 33 Maple. The defendants assert that the court's finding that the hedges did not encroach on 33 Maple "contradicts the testimony of the only witnesses who had personal knowledge of the hedges." They further argue that the court's finding was based on the 1998 and 2006 surveys, "which the court purported to interpret in the absence of requisite expert testimony." They contend that the court's finding is clearly erroneous because "the court appears to have found that there was no evidence that the hedges encroached onto 33 Maple because it disbelieved Allen, not because there is evidence in the record permitting a reasonable inference that the hedges did not encroach onto 33 Maple." We are not persuaded.

At trial, Allen testified that there were shrubs and other plantings that encroached on 33 Maple, which were maintained by the defendants' landscapers. There was also testimony from Mantione that the hedges extended to the pillar and retaining wall that he built in 1998 and from Erb that the defendants maintained the hedges and ground cover shown in a photograph that was entered into evidence at trial. As we recited previously in this opinion, however, the court, in its memorandum of decision, found that "Allen's testimony lacked credibility in many respects." There was also evidence in addition to Allen's testimony, by way of the 1998 and 2006 surveys,[10] that depicted the hedges at the location that Allen described. This evidence, however, shows that the hedges are located on 43 Maple, not 33 Maple. Additionally, contrary to Allen's testimony, the only photograph of the hedges that was entered into evidence shows tall landscaped hedges that appear to be on the defendants' side of the property line, and the photograph does not depict any shrubs or other plantings. Consequently, the court's finding that the hedges did not encroach onto 33 Maple was not clearly erroneous because there is evidence in the record, namely the surveys and photographs, to support this finding, and the court specifically found Allen's testimony not credible.

We now turn to whether, on the basis of the facts found by the court, the defendants had probable cause to bring the adverse possession and trespass claims. The defendants argue that the court erred in determining that the plaintiffs established a lack of probable cause for the adverse possession claim with respect to the defendants' use of the hedges, the retaining wall and pillar, the mailbox, and the driveway. Allen testified that the alleged encroachments onto 33 Maple on which the adverse possession claims are based existed when he purchased 43 Maple in 1996. The defendants argue, therefore, that they had probable cause to assert the adverse possession claim having met the requirements of adverse possession for the statutory period of fifteen years. The 1998 survey, however, shows no such encroachments. Moreover, as previously mentioned,

the court did not credit Allen's testimony with respect to the encroachments and concluded that "Allen's strategy was to defend the prior action based on the false narrative that there were encroachments on 33 Maple . . . that existed in 1996 when Allen purchased 43 Maple . . . ." The court therefore determined that the defendants lacked probable cause to bring the adverse possession claim. We agree and affirm the judgment of the court.

We begin by examining the defendants' adverse possession claim as it pertained to the defendants' use of the property—specifically, with respect to the hedges. As previously mentioned, Allen testified that there were shrubs and other plantings that encroached onto 33 Maple and that they were maintained by the defendants' landscapers. Both the 1998 and 2006 surveys depict hedges at the location that Allen described; however, the surveys depict these hedges to be on 43 Maple, not 33 Maple. Additionally, the only photograph of the hedges entered into evidence depicts them to be on the defendants' side of the property line, which also indicates that the hedges did not encroach on 33 Maple.

Although Allen testified that shrubs and bushes encroached onto 33 Maple, there were no shrubs or other plantings depicted in the photograph, and the court did not find Allen's testimony credible. Further, when asked about the depiction of the hedges in the survey, Allen admitted that the survey showed the hedges to be located entirely on the property of 43 Maple. The court found, contrary to Allen's testimony, that there was no proof of any encroachment by the hedges or other plantings onto 33 Maple that existed in 1996. The court further noted that the defendants never engaged a surveyor to specifically map out the area that they claimed to adversely possess or to stake the property line, and, as a result, there was a lack of evidence as to the location of any encroachments. We conclude that the court properly determined, on the basis of the evidence presented at trial, that the defendants did not have a reasonable good faith belief in the existence of facts essential to bring the claim and thus lacked probable cause to bring the adverse possession claim as it pertained to the defendants' use of the property—specifically, with respect to the hedges.

Allen also testified that the retaining wall and pillar existed in 1996. The 1998 survey, however, does not show an existing retaining wall or pillar. The 2006 survey does show a retaining wall, which indicates that the portion of the wall that encroached onto 33 Maple was constructed sometime between December 4, 1998, and August 18, 2006, the dates on which the respective surveys were completed. Because the 2006 survey also depicts the pillar, the surveys further indicate that the encroaching pillar was constructed when the section of the retaining wall was extended, which then caused

it to encroach on 33 Maple. Both surveys contradict Allen's testimony that the pillar and wall existed when he bought the property in 1996.

Further, Allen's testimony at trial about the interrogatories that he answered in the prior action reveals that his answers to the first and second sets of interrogatories are internally inconsistent. Additionally, Mantione's attestation letter in the prior action, which was drafted by Allen, is also inconsistent with Allen's testimony at trial in the present case. On the basis of these inconsistencies, the court found that "Allen's apparent strategy for preparing the attestation letters was to avoid live testimony and use written statements to control the information to be given to Judge Tobin and to avoid cross-examination that would contradict his version of events." In Allen's first set of interrogatories in the prior action, Allen stated that there was a stone pillar located on the property when he purchased it in 1996. In the second set of interrogatories, however, he stated that there was a brick pillar on the property when he purchased it in 1996. Allen testified at trial that the pillar was brick when he purchased the property in 1996 and subsequently was clad in fieldstone as part of the condominium renovations. Contrary to Allen's testimony, there was no brick shown in the video of the pillar's demolition, and the demolition contractor testified that the workers found no brick when the pillar was demolished in 2019.

Additionally, Mantione's attestation letter, which was drafted by Allen, stated that Mantione and his crew extended the height at the beginning of the retaining wall to form a small pillar during their work on the property in 1999. If the statement in the letter is true, it would indicate that the pillar did not exist in 1996 as Allen testified. When Mantione testified in the present matter, however, he asserted that he did not form a new pillar in 1999; rather, he clad an existing pillar with fieldstone. Mantione's testimony is contradicted by the surveys and the testimony about the demolition of the pillar, and the court ultimately found it to be not credible. Instead, the court found this change in testimony to be an effort to bolster Allen's testimony about the existing brick pillar. On the basis of the surveys and the significant inconsistencies in the testimony of both Allen and Mantione, we agree with the court that the defendants did not have a reasonable, good faith belief in the existence of the facts essential to bring the adverse possession claim, and, therefore, they lacked probable cause to bring the claim as it pertained to the defendants' use of the property—specifically, with respect to the retaining wall and pillar.

Allen also claimed that the mailbox existed when he purchased the property in 1996 and that it encroached onto 33 Maple. In spite of this claim, Allen himself testified that the 1998 and 2006 surveys did not show

an encroaching mailbox on 33 Maple. Moreover, a photograph introduced as an exhibit at trial also showed the mailbox to be on 43 Maple, rather than on 33 Maple. The evidence in the record does not support a reasonable, good faith belief in the existence of a claim for adverse possession as it pertained to the defendants' use of the property—specifically, with respect to the mailbox.

Finally, with respect to the driveway, Allen claimed that the driveway was in existence in 1996 when he purchased the property and that it was located on the property of 33 Maple. When Allen testified, however, he admitted that neither the 1998 or 2006 surveys depicted any driveway encroaching onto 33 Maple. Further, during Rubin's testimony, Rubin indicated that, in an interrogatory answered by Allen in the prior action, Allen asserted that he did not have knowledge of when the portion of the curbed driveway that is located on the common property line came into existence. Allen also indicated in that interrogatory that he did not know whether that portion of the driveway was located on the common property line or on 33 Maple. On the basis of these inconsistencies in Allen's statements and the facts in the record, we determine that the court did not err in finding that the defendants did not have probable cause to bring the adverse possession claim as it pertained to the defendants' use of the property—specifically, with respect to the driveway.

The defendants further argue that the court erred in determining that the plaintiffs established a lack of probable cause to bring the trespass counterclaim. The defendants argue that they had probable cause for a trespass claim based on the plaintiffs' modifications to the disputed portion of 33 Maple because the defendants had acquired it by adverse possession. Because we determine that the court did not err in finding that the defendants lacked probable cause to believe that they had acquired the property by adverse possession, they also lacked probable cause to assert the trespass claim with respect to the disputed property over which they had no possessory right.

Specifically, with respect to this claim, the court found that Allen "fabricat[ed] a trespass claim that was bereft of evidence and was withdrawn at trial of the prior action after [the] defendants had rested their case." The court noted that Powers testified that the defendants withdrew the trespass claim because there was insufficient evidence.

We agree with the court that the dearth of evidence to support the defendants' claims evidences the defendants' lack of probable cause to bring the adverse possession and trespass counts of the counterclaim. The court's conclusion that the defendants lacked probable cause to bring the adverse possession and trespass claims is legally and logically correct and has support

from the facts that appear in the record. Accordingly, we conclude that the court did not err when it determined that the defendants lacked probable cause to bring both counts of the counterclaim.

### III

The defendants next claim that the court improperly denied their motion for a directed verdict. The defendants argue that, "[e]ven if the trial court fully discredits Allen's testimony in finding lack of probable cause, the balance of the evidence unequivocally and completely supports [the] defendants' good faith, reasonable, and bona fide belief that they had a viable claim for adverse possession in the quiet title action." They claim that the court could not conclude the opposite simply because it disbelieved Allen. In support thereof, they cite *Essex Ins. Co.* v. *William Kramer & Associates, LLC*, 331 Conn. 493, 205 A.3d 534 (2019), without any analysis whatsoever.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Citation omitted; internal quotation marks omitted.) *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803, 256 A.3d 655 (2021). Because the defendants' brief did not provide any analysis of their claim that the court improperly denied their motion for a directed verdict, we conclude that the claim was inadequately briefed. We, therefore, decline to review it on appeal.

### IV

The defendants further claim that the court improperly determined that they failed to establish their advice of counsel defense. We disagree.

We begin by setting forth the legal principles related to this claim. "[T]he defense [of advice of counsel] has five essential elements. First, the defendant must actually have consulted with legal counsel about his decision to institute a civil action . . . . Second, the consultation with legal counsel must be based on a full and fair disclosure by the defendant of all facts he knew or was charged with knowing concerning the basis for his contemplated . . . action . . . . Third, the lawyer to whom the defendant turns for advice must be one from whom the defendant can reasonably expect to receive an accurate, impartial opinion as to the viability of his

claim . . . . The fourth element . . . is, of course, that the defendant, having sought such advice, actually did rely upon it . . . . Fifth and finally, if all other elements of the defense are satisfactorily established, the defendant must show that his reliance on counsel's advice was made in good faith." (Internal quotation marks omitted.) *Rieffel* v. *Johnston-Foote*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-13-6019381-S (February 19, 2015) (reprinted at 165 Conn. App. 391, 406–407, 139 A.3d 729), aff'd, 165 Conn. App. 391, 139 A.3d 729, cert. denied, 322 Conn. 904, 138 A.3d 289 (2016).

"Advice of counsel is a complete defense to an action of . . . [vexatious litigation] when it is shown that the [client] . . . instituted his [or her] civil action relying in good faith on such advice, given after a full and fair statement of all facts within his [or her] knowledge, or which he [or she] was charged with knowing. . . .

"In determining whether a [client] gave a full and fair statement of the facts within his or her knowledge to counsel, reliance on whether the omitted information would have had any impact on counsel's decision to bring the allegedly vexatious action . . . is irrelevant . . . because, as a matter of law, showing an impact on an attorney's ultimate course of action is not an element of the defense of reliance on counsel. . . . In other words, a client should not be permitted to rely upon the defense of advice of counsel if the client did not disclose all of the material facts related to a potential claim, because the lawyer cannot render full and accurate legal advice regarding whether there is a good faith basis to bring the claim in the absence of knowledge of all material facts. In such instances, a client's reliance on the advice of counsel is unreasonable regardless of whether the material facts would have altered counsel's assessment of the validity of the claim." (Internal quotation marks omitted.) *Rozbicki* v. *Sconyers*, 198 Conn. App. 767, 783–84, 234 A.3d 1061 (2020).

"Whether there was a full and fair disclosure of material facts as required by the advice of counsel defense is a question of fact . . . ." (Citation omitted; internal quotation marks omitted.) *Verspyck* v. *Franco*, 274 Conn. 105, 112–13, 874 A.2d 249 (2005). As previously noted, "[a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached." (Citation omitted; internal quotation marks omitted.) Id., 113.

In its memorandum of decision, the court rejected the defendants' reliance on the advice of counsel defense.

Specifically, the court determined that the defendants failed to establish both that they had made a full and fair disclosure to their attorneys of all facts they knew or were charged with knowing and that their reliance on counsel's advice was made in good faith.

With respect to the second element of the advice of counsel defense, the defendants argue that "[a]n objective review of the evidence presented at trial reveals that Allen provided both of his counsel with all of the material facts within his knowledge." We disagree and conclude that there is evidence in the record to support the court's finding, and, thus, the court's finding is not clearly erroneous.

As we stated previously in this opinion, the court ultimately found that "Allen withheld and misrepresented material facts to counsel, limited counsel's preparation, and acted to prevent counsel from learning adverse material facts by preventing counsel from independently investigating the defense and claims to corroborate his version of events." The court further found that all of the information related to encroachments on 33 Maple came from Allen, who kept his counsel, Rubin, and subsequently, Powers, "on a tight leash . . . to prevent them from learning about Allen's deception." Moreover, the court found that, at the trial in the prior action, Allen withheld from his counsel the 1998 and 2006 surveys done by his surveyor, which were pivotal evidence against his position.

Following the first day of trial in the prior action, on the evening of April 18, 2018, Allen notified Powers that the general contractor and architect on the condominium conversion project as well as a realtor involved in marketing Allen's properties were willing to sign attestation letters with respect to facts in issue including the construction of the mailbox, the pillar, and landscaping. The attestation letters, which were drafted by Allen and later signed by the contractor, architect, and realtor, were never admitted into evidence, however, and the signatories did not appear as witnesses at the trial. In the present action, the court noted that no evidence was presented to indicate that Rubin was aware of the facts recited in the attestation letters or the identity of the signatories prior to Allen's preparation of the letters after the first day of trial. Additionally, Rubin testified in the present action that, while he was representing Allen, he had asked Allen for the names of the contractors who worked on the property, but Allen had failed to identify them. On the basis of these facts, the court inferred that "Allen knew the identity of the architect, contractor, and realtor and knew they had material information about the subject property that was kept from his counsel, who in the ordinary course at least would have interviewed them and reviewed their files in preparation of the case."

Further, as the court found, Rubin advised Allen of

the need to corroborate Allen's testimony about the encroachments, but Allen did not do so despite the fact that he obtained two separate surveys of the property that depicted the disputed area. Allen did not produce any documentation of the condominium project, including the 1998 and 2006 surveys, both of which were prepared at the defendants' request. Rubin saw the surveys for the first time on May 9, 2017, when they were produced by the plaintiffs' counsel as deposition exhibits at Allen's deposition. The surveys were critical, material evidence at trial because they depicted the disputed area and the existence or nonexistence of each of the claimed encroachments at two different periods in time. On the basis of the foregoing facts, we conclude that there is evidence in the record to support the court's finding that the defendants had not made a full and fair disclosure to counsel of the material facts within their knowledge. On the basis of the evidence in the record, the court reasonably could have found that Allen omitted information that he was charged with knowing based on the events surrounding the attestation letters and his failure to provide his counsel with the 1998 and 2006 surveys. Accordingly, the court's finding that the defendants did not make a full and fair disclosure to counsel of the material facts within their knowledge is not clearly erroneous.

With respect to the fifth element of the defense, the defendants argue that "[t]he court's finding that [the] defendants did not rely on their counsel's advice in good faith is clearly erroneous based on the evidence corroborating [the] defendants' claims and the . . . court's improper focus on [the] defendants' right to supervise and direct the litigation, including discovery." We disagree. Because we conclude that the defendants knowingly did not make a full and fair disclosure to counsel, their reliance on counsel's advice necessarily could not have been made in good faith. We, therefore, uphold the court's conclusion that the defendants did not establish their advice of counsel defense.

V

Last, the defendants claim, summarily, that the court improperly found that they acted with malice. Specifically, the defendants argue that, because there was probable cause to bring the prior action, the court could not "properly infer malice from a lack of probable cause." Additionally, the defendants seem to argue that the court's finding of their "improper motives" is not supported by the record but, rather, it is based on the court's disbelief of Allen, "which constitutes clear error."

"In a vexatious suit action, the defendant is said to have acted with malice if he acted primarily for an improper purpose; that is, for a purpose other than that of securing the proper adjudication of the claim on which [the proceedings] are based . . . ." (Citation

omitted; internal quotation marks omitted.) *DeLaurentis* v. *New Haven*, supra, 220 Conn. 256 n.16. "Malice may be inferred from lack of probable cause." (Internal quotation marks omitted.) *Tatoian* v. *Tyler*, supra, 194 Conn. App. 57.

Because we have concluded in this opinion that the court properly determined that the defendants lacked probable cause to bring their claims, it was proper for the court to infer that the defendants acted with malice. See id.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-575 (a) provides in relevant part: "No person shall make entry into any lands or tenements but within fifteen years next after his right or title to the same first descends or accrues or within fifteen years next after such person or persons have been ousted from possession of such land or tenements; and every person, not entering as aforesaid, and his heirs, shall be utterly disabled to make such entry afterwards; and no such entry shall be sufficient, unless within such fifteen-year period, any person or persons claiming ownership of such lands and tenements and the right of entry and possession thereof against any person or persons who are in actual possession of such lands or tenements, gives notice in writing to the person or persons in possession of the land or tenements of the intention of the person giving the notice to dispute the right of possession of the person or persons to whom such notice is given and to prevent the other party or parties from acquiring such right, and the notice being served and recorded . . . shall be deemed an interruption of the use and possession and shall prevent the acquiring of a right thereto by the continuance of the use and possession for any length of time thereafter, provided an action is commenced thereupon within one year next after the recording of such notice. The limitation herein prescribed shall not begin to run against the right of entry of any owner of a remainder or reversionary interest in real estate, which is in the adverse possession of another, until the expiration of the particular estate preceding such remainder or reversionary estate."

[2] On December 27, 2019, the court granted the defendants' motion to dismiss the slander of title count after finding that the defendants were entitled to the absolute litigation privilege. There are no claims on appeal related to this issue.

[3] In the counts of the complaint alleging vexatious litigation, the plaintiffs do not specifically indicate whether the claims are statutory claims, brought under General Statutes § 52-568, or common-law claims. In the prayer for relief, however, the plaintiffs requested, for the second count, "[d]ouble damages pursuant to . . . § 52-568 (1)" and for the third count, "[t]reble damages pursuant to . . . § 52-568 (2) . . . ." Despite the plaintiffs' lack of precision in the counts of the complaint, the court, in its memorandum of decision, asserted that the "plaintiffs claim that in . . . prosecuting the counterclaims in the prior action [the] *defendants committed vexatious litigation under . . . § 52-568 and at common law*." (Emphasis added.) After finding that the defendants lacked probable cause to bring the claims and that they acted with malice, the court ultimately awarded the plaintiffs' treble damages under § 52-568 (2). We note that, regardless of whether the plaintiffs' claims in the present case were brought under § 52-568 or the common law, our analysis in this opinion with respect to probable cause is the same. See *Ferri* v. *Powell-Ferri*, 200 Conn. App. 63, 68, 239 A.3d 1216 (noting that "[a] statutory action for vexatious litigation under . . . § 52-568 . . . differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages" (footnote omitted; internal quotation marks omitted)), cert. denied, 335 Conn. 970, 240 A.3d 285 (2020).

[4] "Because [the] defendants never engaged a surveyor to map out the claim to have adversely possessed a portion of 33 Maple . . . or to stake the line, there is a paucity of evidence as to the location of any alleged encroachments other than a portion of the wall where the pillar and wall were located on the 2006 survey."

[5] "Two egregious examples of frivolous and dilatory motions filed by [the] defendants were the motion to dismiss filed on February 22, 2018, less than

two months before trial was scheduled, and the application for ex parte temporary injunction filed the week before on February 16, 2018. In the motion to dismiss [the] defendants denied they were owners of 43 Maple . . . and referred to various conveyances to Allen's entities. The motion to dismiss was denied after a hearing. In fact, [the] defendants were the owners of 43 Maple . . . . In the application for ex parte temporary injunction [the] defendants falsely represented: '[The] plaintiffs are in the process of removing stone walls, shrubbery, and other physical structures that exist on the disputed portions of real property for which are the corpus of this case.' The court vacated the ex parte injunction that had been issued on February 23, 2018 . . . . There was no evidence that the events sworn to by Allen ever occurred and it appears Allen's affidavit was either based on pure hearsay from his wife that turned out not to be true or was simply made up."

[6] General Statutes § 52-263 provides in relevant part: "[I]f either party is aggrieved by the decision of the court . . . upon any question or questions of law arising in the trial . . . *he may appeal to the court having jurisdiction from the final judgment of the court . . . .*" (Emphasis added.)

[7] As we noted previously in this opinion, in their complaint, the plaintiffs alleged two separate counts of vexatious litigation against the defendants, both of which were based on the defendants' underlying claims of adverse possession *and* trespass. One of the counts was labeled "vexatious suit" and the other count was labeled "malicious vexatious suit."

[8] "The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner." (Internal quotation marks omitted.) *Anderson* v. *Poirier*, 121 Conn. App. 748, 752, 997 A.2d 604, cert. denied, 298 Conn. 904, 3 A.3d 68 (2010).

[9] In their brief, the defendants also argue, albeit in a conclusory manner, that the court conflated its analysis of probable cause with its analysis of the advice of counsel defense, specifically with respect to its findings that Allen had lied to his counsel. In the introductory section of the defendants' brief, the defendants assert that "the court purported to consider and determine an essential element of [the] plaintiffs' claim—lack of probable cause—through the lens of [the] defendants' advice of counsel defense, thereby commingling the parties' burdens to a point where factual evidence of probable cause clearly was not considered."

We observe that the defendants did not adequately brief this aspect of their claim with reference to any authority or an analysis of the court's written decision. As this court has explained previously, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Starboard Fairfield Development, LLC* v. *Gremp*, 195 Conn. App. 21, 31, 223 A.3d 75 (2019). When, during oral argument, a member of this panel asked counsel for the defendants about this aspect of their claim, counsel did not seem to remember having made this argument at all and did not pursue it.

Even if the argument is properly before us, we note that the court's memorandum of decision reflects that, in a single sentence, the court stated that "Allen's false and deceptive misconduct in the prior action provides graphic evidence of his lack of probable cause, bad faith, and malice." Despite this isolated reference linking its analysis of "probable cause" with its finding concerning Allen's "deceptive misconduct," our review of the decision as a whole reflects that the court did not conflate probable cause with its findings that Allen had lied to counsel. The court's analysis of probable cause was supported by reference to appropriate legal principles and it does not appear to have been intertwined with its analysis of the advice of counsel defense raised by the defendants. "It is well settled that [we] do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary." (Internal quotation marks omitted.) *Ellen S.* v. *Katlyn F.*, 175 Conn. App. 559, 565, 167 A.3d 1182 (2017).

[10] Both the 1998 and 2006 surveys were entered into evidence as full exhibits without objection at trial. The defendants never claimed at trial that an expert was necessary to interpret the surveys. To the extent that the defendants argue that the court was unable to rely on the surveys in

the manner that it did, they appear to raise a claim related to the admissibility of the surveys. We decline to entertain an unpreserved evidentiary claim in the context of this claim. "Whenever evidence is admitted without objection, the trier of fact can rely on its contents for whatever they are worth on their face. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *Lambert* v. *Donahue*, 78 Conn. App. 493, 501, 827 A.2d 729 (2003). Because these surveys were admitted into evidence without limitation, the court properly drew whatever inferences from the surveys that it deemed to be reasonable.

—————————————————