******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT D. RUSSO, EXECUTOR (ESTATE OF
THOMAS F. THORNTON), ET AL. *v.* BRETT
W. THORNTON ET AL.
(AC 45070)

Alvord, Prescott and Moll, Js.

*Syllabus*

The plaintiffs sought to recover damages from the defendants for, inter alia,
breach of fiduciary duty in connection with the defendant B's alleged
tortious interference with the business expectancies of the plaintiff
companies, T Co. and H Co. The decedent, T, founded the plaintiff
companies and, following T's death, R was elected as their sole director.
While employed by the plaintiff companies, B established the defendant
companies, W Co. and D Co., to engage in the same business as the
plaintiff companies. B covertly removed equipment and records from
the plaintiff companies' place of business and, subsequently, R termi-
nated B's employment. Before trial, the court granted the plaintiffs'
application for temporary ex parte relief, ordering, inter alia, that the
defendants were enjoined from transferring the defendant companies'
assets. The court also granted the plaintiffs' motion for a temporary
receiver to monitor the defendants' compliance with the terms of the
temporary injunction. The jury returned a verdict for the plaintiffs
against B as to certain counts of the complaint. The remaining counts
were tried to the court, which determined that the plaintiffs had not
established a prima facie case for a claim under the Connecticut Unfair
Trade Practices Act (CUTPA) (§ 42-110a et seq.) against the defendant
companies. The court, in a supplemental memorandum of decision,
concluded that B had violated CUTPA and that the plaintiffs were entitled
to punitive damages. The court thereafter awarded punitive damages
against B in the form of attorney's fees and costs. The plaintiffs filed
an application for a financial institution execution directed to B. B filed
a motion to vacate the execution and a judgment lien encumbering his
real property, arguing that the court had not rendered a final judgment
because the temporary injunction and temporary receivership had not
been made permanent or further modified, and because there had been
no "formal entry of judgment." The court denied B's motion, concluding
that it rendered a final judgment when it awarded punitive damages
and that the defendants failed to appeal within the ensuing twenty day
appeal period. The court also granted the plaintiffs' application for a
turnover and charging order. On the defendants' appeal to this court,
*held*:

1. D Co. was not aggrieved by the trial court's denial of B's motion to vacate
   or by the court's turnover and charging order and, accordingly, this
   court dismissed the portion of the appeal filed by D Co.; D Co. did not
   have a specific personal and legal interest that had been specially and
   injuriously affected by the judgment from which the defendants
   appealed, as the execution and the judgment lien affected only B's
   property interests and the turnover and charging order imposed obliga-
   tions only on B and W Co.

2. The trial court correctly concluded that it had rendered a final judgment
   that gave rise to the postjudgment enforcement remedies pursued by
   the plaintiffs: the court rendered a final judgment when it determined
   the amount of the punitive damages awarded to the plaintiffs with
   respect to their CUTPA claim against B because, at that juncture, all of
   their claims had been resolved, no appeal had been filed on or before
   the expiration of the appeal period and, accordingly, the plaintiffs were
   authorized to seek postjudgment enforcement remedies in the form of
   the execution, the judgment lien, and the turnover and charging order,
   all of which originated following the expiration of the appeal period
   and the automatic appellate stay of execution; moreover, contrary to
   the claim of B and W Co., no legal authority mandates that, as a prerequi-
   site for the rendering of a final judgment in a civil case, a trial court
   must issue a "formal written and signed judgment."

3. The trial court properly ordered injunctive relief and continued a receiver-

ship as part of its turnover and charging order:

a. B and W Co. could not prevail on their claim that the turnover and charging order improperly subjected them to injunctive relief; B and W Co. conflated the plaintiffs' prejudgment requests for injunctive relief with their postjudgment request for temporary injunctive relief in connection with their application for a turnover and charging order, and the court did not abuse its discretion in temporarily enjoining B and W Co. from taking certain actions relating to W Co.'s operations pending B's turnover of his interest in W Co. to the plaintiffs or the satisfaction of the judgment debt.

b. B and W Co.'s claim that the turnover and charging order improperly continued the receivership pending B's turnover of his interest in W Co. to the plaintiffs or the satisfaction of the judgment debt was unavailing because an application for a receiver is a civil action sounding in equity and, thus, the court did not require express statutory authorization to continue the receivership temporarily.

Argued November 15, 2022—officially released February 14, 2023

*Procedural History*

Action seeking damages for, inter alia, breach of fiduciary duty, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the plaintiffs filed an amended complaint; thereafter, the case was transferred to the Complex Litigation Docket; subsequently, certain counts of the complaint were tried to the jury before *Lee, J.*; verdict and judgment in part for the plaintiffs; thereafter, the plaintiffs withdrew certain counts of the complaint; subsequently, the remaining counts of the complaint were tried to the court, *Lee, J.*; judgment in part for the plaintiffs; subsequently, the court, *Ozalis, J.*, awarded the plaintiffs attorney's fees and costs; thereafter, the court, *Ozalis, J.*, granted the plaintiffs' application for a turnover and charging order and denied the named defendant's motion to vacate a judgment lien and financial institution execution, and the defendants appealed to this court. *Appeal dismissed in part; affirmed.*

*Harold F. McGuire, Jr.*, with whom was *Daniel F. McGuire*, for the appellants (defendants).

*Joseph DaSilva, Jr.*, with whom, on the brief, was *Marc J. Grenier*, for the appellees (plaintiffs).

*Opinion*

MOLL, J. The defendants, Brett W. Thornton (Brett), ProxySoft Worldwide, Inc. (ProxySoft Worldwide), and ProxySoft Direct, Inc. (ProxySoft Direct), appeal from the judgment of the trial court (1) granting an application for a turnover and charging order filed by the plaintiffs, Home Dental Care, Inc., Thornton International, Inc., and Robert D. Russo, acting in his capacity as executor of the estate of Thomas F. Thornton, and (2) denying Brett's motion to vacate a judgment lien and a financial institution execution. On appeal, the defendants claim that the court (1) incorrectly concluded that it had rendered a final judgment that gave rise to the postjudgment enforcement remedies pursued by the plaintiffs, and (2) improperly ordered injunctive relief and continued a receivership as part of the turnover and charging order. We conclude that ProxySoft Direct is not aggrieved by the judgment from which the defendants have appealed, and, therefore, we dismiss the portion of the appeal filed by ProxySoft Direct. As to the remainder of the appeal, filed by Brett and ProxySoft Worldwide, we affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of this appeal. The decedent, Thomas F. Thornton, was the founder of Thornton International, Inc., and Home Dental Care, Inc. (collectively, plaintiff companies), which were involved in the manufacture and distribution of dental floss. Following the decedent's death, Russo was appointed as the executor of the decedent's estate. On April 9, 2014, in accordance with the decedent's will, Russo was elected as the sole director, secretary, and treasurer of the plaintiff companies, and Brett was elected as the president of the plaintiff companies. While employed by the plaintiff companies, Brett established ProxySoft Worldwide and ProxySoft Direct (collectively, defendant companies) to engage in the same business as the plaintiff companies. In late April, 2015, Brett covertly removed, inter alia, equipment and records from the plaintiff companies' place of business and transported those items to the defendant companies' place of business. By correspondence dated May 4, 2015, Brett informed Russo that he intended to start his own company engaging in the same lines of business as the plaintiff companies. On May 6, 2015, Russo discovered Brett's removal of the plaintiff companies' assets, and, on the same day, Russo terminated Brett's employment as president of the plaintiff companies.

On May 14, 2015, the plaintiffs filed an application for an ex parte temporary injunction and an order to show cause, as well as a verified complaint. In an amended verified complaint dated February 12, 2016,[1] the plaintiffs alleged claims of breach of fiduciary duty (count one), statutory theft in violation of General Stat-

utes § 52-564 (count two), conversion (count three), violation of the Connecticut Uniform Trade Secrets Act (CUTSA), General Statutes § 35-50 et seq. (count four), tortious interference with contract and business expectancies (count five), violation of § 1125 (a) of the Lanham Act, 15 U.S.C. § 1051 et seq. (count six), injunctive relief pursuant to the common law (count seven), and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. (count eight). The defendants filed a verified answer and special defenses, and the plaintiffs filed a reply to the special defenses.

On April 12, 2016, the trial court, *Heller, J.*, granted the plaintiffs' application for temporary ex parte relief, ordering, inter alia, that the defendants were enjoined from transferring the defendant companies' assets. The same day, the court granted a motion that the plaintiffs had filed on October 23, 2015, seeking to appoint a temporary receiver vis-à-vis the defendant companies. The court appointed Attorney Frederic S. Ury to serve as the temporary receiver. Ury's duties included, inter alia, monitoring the defendants' compliance with the terms of the temporary injunction, but Ury was not responsible for managing the day-to-day operations of the defendant companies. The court further ordered that the defendant companies would incur the cost of Ury's fees and expenses.

On September 20, 2017, the plaintiffs filed a motion requesting that the court conduct a court trial as to counts six through eight concomitantly with a jury trial that had been scheduled as to counts one through five. On October 6, 2017, the court, *Lee, J.*, granted the plaintiffs' motion.

The evidentiary portion of the jury trial on counts one through five commenced on October 11, 2017, and concluded on October 25, 2017. On October 31, 2017, the jury returned a verdict in favor of the plaintiffs against Brett, which the court accepted and recorded on the same day. The jury also answered interrogatories as part of the verdict as follows. With respect to the plaintiffs' claims against Brett, encompassed in counts one through five, the jury awarded a total of $3,592,000 in damages as to the claims for breach of fiduciary duty, statutory theft, and tortious interference with contract and business expectancies, but it awarded no compensatory damages as to the conversion or CUTSA claims.[2] Although the jury did not award compensatory damages vis-à-vis the conversion claim against Brett, it determined that the plaintiffs were entitled to common-law punitive damages as to that claim. With respect to the plaintiffs' claims against the defendant companies, encompassed in counts three through five, the jury found the defendant companies liable only on the CUTSA claim, but it awarded no damages as to that claim.

On January 2, 2018, the defendants filed a motion to dissolve the temporary injunction and to discharge the temporary receiver. On January 19, 2018, the plaintiffs filed an objection. On February 1, 2018, the court (1) denied without prejudice the portion of the defendants' motion seeking to discharge the temporary receiver and (2) granted in part and denied in part the portion of the defendants' motion seeking to dissolve the temporary injunction, ordering in relevant part that the defendant companies continue to be enjoined from transferring any of their assets.[3]

On March 22, 2018, the court granted in part a motion to set aside the verdict that the defendants had filed on November 7, 2017, and ordered a remittitur reducing the damages awarded against Brett from $3,592,000 to $2,276,000. The plaintiffs accepted the remittitur by way of a notice filed on April 9, 2018.[4] On July 23, 2018, the plaintiffs withdrew counts six and seven.

On April 1, 2019, the court issued a supplemental decision addressing count eight, which alleged that the defendants had violated CUTPA.[5] The court determined that the plaintiffs had not established a prima facie case for a CUTPA claim against the defendant companies. As to Brett, however, the court reserved the questions of (1) whether Brett was liable under CUTPA and, (2) if so, whether, under CUTPA, the plaintiffs were entitled to punitive damages, attorney's fees, and costs.[6]

On April 5, 2019, the defendants filed another motion to discharge the temporary receiver, to which the plaintiffs filed an objection on the same day. On May 30, 2019, the court ordered that the temporary receivership "should continue in place" except that, going forward, the plaintiffs would be responsible for the cost of the receiver's fees and expenses and it would be "within [the plaintiffs'] discretion to decide if they want to continue to do it."[7]

On May 21, 2020, the court issued a memorandum of decision[8] concluding that (1) the plaintiffs had demonstrated that Brett had violated CUTPA and (2) the plaintiffs were entitled to punitive damages pursuant to General Statutes § 42-110g (a) of CUTPA in the form of attorney's fees and costs, the amount of which would be determined following an evidentiary hearing.[9] On March 4, 2021, after several evidentiary hearings, the court, *Ozalis, J.*, awarded the plaintiffs punitive damages under CUTPA against Brett in the total amount of $177,615.90, comprising $151,740.50 in attorney's fees and $25,875.40 in costs.[10] Electronic notice of the March 4, 2021 decision issued on the same day.

Prior to April 1, 2021, no appeal had been filed by the defendants in the present case.[11] On April 1, 2021, the plaintiffs filed an application for a financial institution execution directed to Brett as the judgment debtor. The execution identified the date of the judgment as March

4, 2021, and the amount of the judgment to be $2,453,615.90. On May 25, 2021, the execution was issued.

On June 10, 2021, Brett filed a motion to vacate the execution, as well as a judgment lien that the plaintiffs had recorded on the land records of the town of Wilton on April 1, 2021, encumbering real property owned by Brett (motion to vacate). Brett argued that the execution and the judgment lien were premature because the court had yet to render a final judgment. Specifically, Brett asserted that there remained "open" matters, in particular, the temporary injunction and temporary receivership ordered by the court that, as Brett argued, had not been made permanent or further modified. Brett further contended that there had been no "formal entry of judgment" in the present case "detailing the defendants, the counts of the complaint that are involved, the amounts awarded, the costs, and any interest awarded," and that no notice of such judgment had ever issued.

On July 20, 2021, the execution was returned partially satisfied.[12] On July 23, 2021, the plaintiffs filed an objection to Brett's motion to vacate. The same day, pursuant to General Statutes § 52-356b,[13] the plaintiffs filed an application seeking (1) a turnover order directing Brett to turn over to the plaintiffs 100 percent of his shares, stock certificates, or other indicia of his ownership of interest in ProxySoft Worldwide, and (2) a charging order providing that, until Brett had complied with the turnover order or until the satisfaction of the judgment debt, any and all distributions to which Brett may be entitled in connection with his interest in ProxySoft Worldwide would be transferred to the plaintiffs. The plaintiffs also requested the appointment of a receiver "to control the affairs and [to] operate . . . ProxySoft Worldwide . . . until such time as the judgment referenced herein has been satisfied in full." On August 24, 2021, the defendants filed a combined reply brief to the plaintiffs' objection to Brett's motion to vacate and an objection to the plaintiffs' application for a turnover and charging order. On September 22, 2021, the court held a hearing on the plaintiffs' application for a turnover and charging order.

On October 21, 2021, the court denied Brett's motion to vacate, determining that (1) it had rendered a final judgment on March 4, 2021, and (2) the defendants had failed to file an appeal within the ensuing twenty day appeal period, such that, as of March 25, 2021, the plaintiffs were free to pursue postjudgment enforcement remedies. In a separate decision issued on October 21, 2021, the court granted the plaintiffs' application for a turnover and charging order, ordering that (1) Brett's interest in ProxySoft Worldwide was charged with payment of the unsatisfied amount of the judgment debt, plus costs, (2) Brett was to turn over to the plaintiffs his sole shareholder's interest in ProxySoft World-

wide, and (3) until Brett had turned over his interest in ProxySoft Worldwide to the plaintiffs or until the judgment debt was paid in full, inter alia, (a) ProxySoft Worldwide could neither acquire nor alienate any capital asset without court approval, (b) ProxySoft Worldwide could not issue any loans, and (c) neither ProxySoft Worldwide nor Brett could "undertake, enter into, or consummate any sale, transfer, encumbrance, hypothecation, split, dilution, or other modification of [Brett's] interest in [ProxySoft Worldwide] or in [ProxySoft Worldwide's] structure and/or ownership." The court further ordered that, pending Brett's compliance with the turnover order or the satisfaction of the judgment debt, ProxySoft Worldwide was required to supply future financial documents within ten days following their issuance or the close of any respective accounting period to Ury, "whose appointment as the receiver . . . [was] . . . continued and renewed."[14] This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

As a preliminary matter, we address the issue of whether ProxySoft Direct is aggrieved by the trial court's denial of Brett's motion to vacate or by the court's turnover and charging order. We conclude that ProxySoft Direct is not aggrieved by either of these decisions, and, therefore, we dismiss the portion of the appeal filed by ProxySoft Direct.[15]

" 'Aggrievement, in essence, is appellate standing. . . . It is axiomatic that aggrievement is a basic requirement of standing, just as standing is a fundamental requirement of jurisdiction. . . . There are two general types of aggrievement, namely, classical and statutory; either type will establish standing, and each has its own unique features. . . . The test for determining [classical] aggrievement encompasses a well settled twofold determination: first, the party claiming aggrievement must demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest shared by the community as a whole; second, the party claiming aggrievement must establish that this specific personal and legal interest has been specially and injuriously affected by the decision.' . . . *In re Ava W.*, 336 Conn. 545, 554–55, 248 A.3d 675 (2020); see also General Statutes § 52-263 (establishing as prerequisite to party filing appeal that 'party is aggrieved by the decision of the court or judge upon any question or questions of law'). 'Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected.' " *Healey* v. *Mantell*, 216 Conn. App. 514, 524, 285 A.3d 823 (2022).

We conclude that ProxySoft Direct does not have a specific personal and legal interest that has been specially and injuriously affected either by the court's

denial of Brett's motion to vacate or by the court's turnover and charging order.[16] Both the execution and the judgment lien affect only Brett's property interests, such that the court's denial of Brett's motion to vacate has no cognizable bearing on ProxySoft Direct. Similarly, the turnover and charging order makes no mention of ProxySoft Direct; rather, it concerns Brett's interests in ProxySoft Worldwide and imposes obligations only on Brett and ProxySoft Worldwide. Accordingly, ProxySoft Direct is not aggrieved by the judgment from which the defendants have appealed, and, therefore, we dismiss the portion of this appeal filed by ProxySoft Direct.

## II

With respect to the trial court's denial of Brett's motion to vacate, as well as the court's turnover and charging order, Brett and ProxySoft Worldwide claim that the court incorrectly concluded that it had rendered a final judgment and, therefore, the plaintiffs were not entitled to pursue postjudgment enforcement remedies in the form of the execution, the judgment lien, and the turnover and charging order. We disagree.

Whether the trial court correctly concluded that it had rendered a final judgment that gave rise to postjudgment enforcement remedies presents a question of law subject to plenary review. See *Williams* v. *Mansfield*, 215 Conn. App. 1, 10, 281 A.3d 1263 (2022) ("[w]hen . . . a court's decision is challenged on the basis of a question of law, our review is plenary").

"The right of appeal is purely statutory, and . . . § 52-263[17] provides that parties may appeal to this court from the final judgment of the trial court." (Footnote in original.) *Kazemi* v. *Allen*, 214 Conn. App. 86, 102, 279 A.3d 742 (2022), cert. denied, 345 Conn. 971, 286 A.3d 906 (2023); see also Practice Book § 61-1 ("[a]n aggrieved party may appeal from a final judgment, except as otherwise provided by law"). " 'When judgment has been rendered on an entire complaint . . . such judgment shall constitute a final judgment.' Practice Book § 61-2. As a general rule, however, a judgment that disposes of only a part of a complaint is not final, unless it disposes of all of the causes of action against the appellant. *Manifold* v. *Ragaglia*, 272 Conn. 410, 417–18 n.8, 862 A.2d 292 (2004); *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 262 Conn. 240, 246, 811 A.2d 1272 (2002); see also Practice Book § 61-3 (party may appeal if partial judgment disposes 'of all causes of action . . . against a particular party or parties')." *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 717, 183 A.3d 1164 (2018).

"Unless a different time period is provided by statute, an appeal must be filed within twenty days of the date notice of the judgment or decision is given." Practice Book § 63-1 (a). "If notice [of the judgment or decision]

is given only by mail or by electronic delivery, the appeal period shall begin on the day that notice was sent to counsel of record by the clerk of the trial court." Practice Book § 63-1 (b). "Except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment or order shall be automatically stayed until the time to file an appeal has expired." Practice Book § 61-11 (a).

In denying Brett's motion to vacate, the court concluded that it had rendered a final judgment on March 4, 2021, when it determined the amount of the punitive damages awarded to the plaintiffs vis-à-vis their CUTPA claim against Brett. The court explained that, "[a]s all of the causes of action asserted against the defendants in the amended [verified] complaint were adjudicated when this court issued its memorandum of decision on March 4, 2021, judgment was final on that date." The court further determined that the defendants did not file an appeal within the ensuing twenty day appeal period, such that the "judgment was final for all purposes, including but not limited to, for collection purposes on March 25, 2021." Accordingly, the court concluded that there was no basis to vacate the execution, which was issued on May 25, 2021, or the judgment lien, which was recorded on April 1, 2021.[18]

We agree with the court's reasoning insofar as the court concluded that, as of March 25, 2021, the plaintiffs were permitted to pursue postjudgment enforcement remedies to collect the full amount of the damages that they had been awarded. The court rendered an appealable final judgment on March 4, 2021, when it determined the amount of statutory punitive damages to which the plaintiffs were entitled pursuant to their CUTPA claim against Brett. At that juncture, all of the plaintiffs' claims had been resolved in full.[19] Electronic notice of the March 4, 2021 decision issued on the same day, thereby commencing the twenty day appeal period and invoking the attendant automatic appellate stay of execution. See Practice Book §§ 61-11 (a) and 63-1 (a) and (b). No appeal was filed on or before March 24, 2021, when the appeal period and the automatic appellate stay of execution expired. See Practice Book §§ 61-11 (a) and 63-1 (a). Accordingly, the plaintiffs were authorized to seek postjudgment enforcement remedies in the form of the execution, the judgment lien, and the turnover and charging order, all of which originated following the expiration of the appeal period and of the automatic appellate stay of execution vis-à-vis the March 4, 2021 decision, in order to collect the full amount of damages awarded to them.

Brett and ProxySoft Worldwide claim that, as a matter of law, in order to render a final judgment, the court was required to issue a "formal written and signed judgment" that was "sufficiently detailed to identify within the four corners of the document all the issues

that have been decided during the litigation," including the "amount of the judgment debt, the date that judgment was entered on a jury verdict, and any associated costs, with reference to underlying interim decisions," and to "eliminate the need for extraneous references."[20] Brett and ProxySoft Worldwide maintain that "[t]he written judgment in this case should have included all that information in sufficient detail to enable appellate review on a complete record. [They] were entitled to assume that a judgment with those characteristics would be rendered before their time to appeal began to run and before judgment enforcement proceedings commenced," and yet, "[t]he trial court's various rulings were never consolidated in a single dispositive final judgment" as per "[t]he usual practice in this state . . . ."[21]

Put simply, Brett and ProxySoft Worldwide's proposition is without merit. There is no legal authority of which we are aware mandating that, as a prerequisite for the rendering of a final judgment in a civil case, a trial court in this state must issue a "formal written and signed judgment" as described by Brett and ProxySoft Worldwide.[22] On at least one occasion, this court has eschewed the notion that the finality of a judgment is conditioned on the entry of a "formal judgment" following the filing of a motion for judgment. See *Heyman Associates No. 5, L.P.* v. *FelCor TRS Guarantor, L.P.*, 153 Conn. App. 387, 396 n.11, 102 A.3d 87 (determining that, notwithstanding lack of "formal judgment" rendered at time that appeal was filed, defendant had appealed from final judgment "insofar as at the time the appeal was taken the court had adjudicated the entirety of the plaintiffs' complaint"), cert. denied, 315 Conn. 901, 104 A.3d 106 (2014). Moreover, our case law does not reflect that parties have struggled to file appeals in cases involving complaints with multiple counts that are disposed of in segments without the entry of a single document comprehensively detailing the proceedings. See, e.g., *Campbell* v. *Porter*, 212 Conn. App. 377, 386–87, 387 n.10, 275 A.3d 684 (2022) (appeal filed in case in which portions of revised complaint were disposed of in myriad ways, including by way of motion to strike, following jury trial, and withdrawal of certain counts); *Brady* v. *Bickford*, 179 Conn. App. 776, 784–86, 183 A.3d 27 (2018) (appeal filed in case in which portion of amended complaint was disposed of by way of summary judgment and remainder of amended complaint was adjudicated following court trial).[23]

In sum, we conclude that the court properly denied Brett's motion to vacate, and we reject Brett and ProxySoft Worldwide's initial challenge to the court's turnover and charging order.

III

Brett and ProxySoft Worldwide also claim that, in

the turnover and charging order, the trial court improperly (1) ordered injunctive relief and (2) continued the receivership. We address each claim in turn.

A

Brett and ProxySoft Worldwide contend that the turnover and charging order improperly subjected them to injunctive relief, including a prohibition on ProxySoft Worldwide's ability to transfer assets or to make loans pending Brett's turnover of his interest in ProxySoft Worldwide to the plaintiffs or the satisfaction of the judgment debt. Brett and ProxySoft Worldwide maintain that the court was not authorized to order injunctive relief as part of the turnover and charging order because (1) the plaintiffs had abandoned their claim for injunctive relief under the common law, as alleged in the withdrawn seventh count of their amended verified complaint, and (2) the court and the jury had rejected the plaintiffs' claims against ProxySoft Worldwide.[24] This claim is unavailing.

"The issuance of an injunction and the scope and quantum of injunctive relief [rest] in the sound discretion of the trier. . . . [T]he court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *Newtown* v. *Gaydosh*, 211 Conn. App. 186, 205, 272 A.3d 206, cert. denied, 343 Conn. 920, 275 A.3d 213 (2022).

Brett and ProxySoft Worldwide appear to conflate the plaintiffs' prejudgment requests for ex parte temporary injunctive relief and injunctive relief under the common law with the plaintiffs' postjudgment request for temporary injunctive relief in connection with their application for a turnover and charging order. The former is not germane to the latter. We discern no abuse of discretion by the court, ostensibly in an effort to protect the integrity of the turnover and charging order, in its decision to enjoin Brett and ProxySoft Worldwide temporarily from taking certain actions relating to ProxySoft Worldwide's operations pending Brett's turnover of his interest in ProxySoft Worldwide to the plaintiffs or the satisfaction of the judgment debt. Accordingly, Brett and ProxySoft Worldwide's claim fails.

B

Brett and ProxySoft Worldwide also assert that the turnover and charging order improperly continued the receivership pending Brett's turnover of his interest in ProxySoft Worldwide to the plaintiffs or the satisfaction of the judgment debt. Brett and ProxySoft Worldwide

contend that there is no statutory authority that permitted the continuation of the receivership as part of the turnover and charging order.[25] This claim, which raises a question of law subject to our plenary review; *Williams* v. *Mansfield*, supra, 215 Conn. App. 10; merits little discussion. "The Superior Court is a court of general equitable jurisdiction and as such has power to appoint receivers and make such orders in the receivership proceedings as the exigencies of the case may require." *Bassett* v. *Merchants Trust Co.*, 115 Conn. 530, 534, 161 A. 789 (1932); see also W. Horton et al., 1 Connecticut Practice Series: Superior Court Civil Rules (2021–2022 Ed.) c. 21, authors' comments, p. 938 ("[*a*]*bsent statutory provisions*, an application for a receiver is a civil action sounding in equity" (emphasis added)). Thus, we reject Brett and ProxySoft Worldwide's proposition that the court required express statutory authorization to continue the receivership temporarily as part of the turnover and charging order.

The portion of the appeal filed by ProxySoft Direct, Inc., is dismissed for lack of aggrievement; the judgment is affirmed.

In this opinion the other judges concurred.

[1] On January 26, 2016, pursuant to Practice Book § 10-60 (a) (3), the plaintiffs filed a request for leave to file an amended verified complaint, to which the defendants did not file an objection within fifteen days. See Practice Book § 10-60 (a) (3) ("[i]f no party files an objection to the request [for leave] within fifteen days from the date it is filed, the amendment shall be deemed to have been filed by consent of the adverse party").

[2] Brett admitted liability as to the breach of fiduciary duty claim, and the jury found him liable as to the statutory theft, conversion, CUTSA, and tortious interference with contract and business expectancies claims.

[3] The court granted the defendants partial relief by terminating certain portions of the temporary injunction, which we need not detail.

[4] The jury awarded $3,592,000 in compensatory damages against Brett, comprising (1) $1,721,000 as to count one, (2) $185,000 as to count two, which was trebled to $555,000, and (3) $1,316,000 as to count five. The court determined that the compensatory damages awarded against Brett as to count five were duplicative of the compensatory damages awarded against him as to count one. Accordingly, the court set aside the jury's verdict as to count five and concluded that the plaintiffs were entitled to $2,276,000 in compensatory damages collectively as to counts one and two.

[5] In its April 1, 2019 supplemental decision, the court also addressed, and rejected, a request by the plaintiffs for injunctive relief or royalties vis-à-vis count four, which asserted that the defendants had violated CUTSA.

[6] The court determined that the plaintiffs were not entitled to recover compensatory damages under CUTPA because such damages would be duplicative of damages already awarded by the jury.

[7] Between June 30, 2016, and April 30, 2019, in his capacity as receiver, Ury filed reports with the court on a nearly monthly basis. Following the court's May 30, 2019 order, Ury did not file another report until January 10, 2022, after this appeal had been filed.

[8] By way of additional background to the court's May 21, 2020 memorandum of decision, the plaintiffs indicated in posttrial briefing that they had rested as to the CUTPA claim following the presentation of evidence at the jury trial on counts one through five and did not seek to present any additional evidence to the court. On June 29, 2019, at the defendants' request, the court held an evidentiary hearing to allow them to present additional evidence on the CUTPA claim.

[9] In light of its award of punitive damages under § 42-110g (a) of CUTPA, the court determined that awarding the plaintiffs separate attorney's fees pursuant to § 42-110g (d) would be duplicative and, therefore, it declined to do so.

[10] As reflected in the jury's interrogatory answers, the jury determined

that the plaintiffs were entitled to common-law punitive damages vis-à-vis their conversion claim against Brett as alleged in count three. In its March 4, 2021 decision, the court explained that, "[o]n July 19, 2019, prior to [the May 21, 2020] decision, the plaintiffs submitted an affidavit of attorney's fees, which requested reasonable attorney's fees in the amount of $26,355 . . . for the development of and prosecution of the CUTPA claim. . . . At the same time, the plaintiffs also submitted a separate attorney's fees request related to the jury's common-law punitive damages award. . . . The plaintiffs requested $485,987.87 in attorney's fees . . . and requested costs of $25,817.40. After [the court's] May 21, 2020 decision relating to the award of reasonable attorney's fees and costs in the development and prosecution of the plaintiffs' CUTPA claim, the plaintiffs combined these prior requests, and filed an affidavit of attorney's fees, which requested $511,942.50 in attorney's fees and $25,875.49 in costs for the development of and prosecution of their CUTPA claim." (Citations omitted.) We construe the court's March 4, 2021 decision to reflect that the plaintiffs abandoned their pursuit of the common-law punitive damages awarded by the jury, instead opting to pursue attorney's fees and costs only as punitive damages under CUTPA.

[11] On September 15, 2017, two proposed intervenors, Katherine Thornton and Laura Thornton, appealed from the denial of an amended and renewed motion to intervene that they had filed in the present action. That appeal was withdrawn.

[12] The state marshal recovered $2741.62 from the financial institution and deducted $411.25 from that amount in marshal's fees.

[13] General Statutes § 52-356b provides in relevant part: "(a) If a judgment is unsatisfied, the judgment creditor may apply to the court for an execution and an order in aid of the execution directing the judgment debtor, or any third person, to transfer to the levying officer either or both of the following: (1) Possession of specified personal property that is sought to be levied on; or (2) possession of documentary evidence of title to property of, or a debt owed to, the judgment debtor that is sought to be levied on.

"(b) The court may issue a turnover order pursuant to this section, after notice and hearing . . . on a showing of need for the order. . . ."

[14] The language of the turnover and charging order largely tracked that of a proposed order filed by the plaintiffs.

[15] On December 19, 2022, we ordered, sua sponte, the parties to file simultaneous supplemental briefs addressing this aggrievement issue. The parties filed briefs in accordance with our order. The parties are in agreement that ProxySoft Direct is not aggrieved by the court's denial of Brett's motion to vacate or by the court's turnover and charging order.

[16] In addition, there is no basis on which to conclude that ProxySoft Direct is statutorily aggrieved by the court's decisions.

[17] "General Statutes § 52-263 provides in relevant part: '[I]f either party is aggrieved by the decision of the court . . . upon any question or questions of law arising in the trial . . . he may appeal to the court having jurisdiction from the final judgment of the court . . . .' " (Emphasis omitted.) *Kazemi* v. *Allen*, 214 Conn. App. 86, 102 n.6, 279 A.3d 742 (2022), cert. denied, 345 Conn. 971, 286 A.3d 906 (2023).

[18] The finality of judgment argument was raised by Brett in his motion to vacate, as well as by Brett and ProxySoft Worldwide in their objection to the plaintiffs' application for a turnover and charging order. The court did not address the finality of judgment argument in the turnover and charging order, which was issued on the same day as the court's denial of Brett's motion to vacate. We conclude that the court necessarily rejected the finality of judgment argument in issuing the turnover and charging order. Accordingly, as framed by Brett and ProxySoft Worldwide on appeal, we consider the finality of judgment argument in connection with both the court's denial of Brett's motion to vacate and the court's turnover and charging order.

[19] We note that the court had rendered a final judgment disposing of the plaintiffs' causes of action *against the defendant companies* nearly two years earlier. On April 1, 2019, the court issued a supplemental memorandum of decision addressing the plaintiffs' two unresolved claims at the time: (1) the plaintiffs' CUTPA claim against the defendants, as alleged in count eight; and (2) the plaintiffs' request for injunctive relief and royalties vis-à-vis the plaintiffs' CUTSA claim against the defendants, as alleged in count four. The court rejected the plaintiffs' request for relief as to their CUTSA claim. In addition, the court determined that the plaintiffs had failed to demonstrate a prima facie case to support their CUTPA claim against the defendant companies. The April 1, 2019 supplemental memorandum of decision disposed of the plaintiffs' final claims directed to the defendants companies,

and, therefore, it constituted a final judgment vis-à-vis the plaintiffs' causes of action against the defendant companies. See Practice Book § 61-3.

[20] In their appellate brief, the plaintiffs contend that a judgment file is "[t]he closest analog to the summary that [Brett and ProxySoft Worldwide] seek . . . ." "The judgment file . . . is a clerical document, which, even if missing, does not prevent a judgment from having been rendered. . . . The issues of an appeal may be considered even if there is no judgment file." (Citation omitted.) *Gorelick* v. *Montanaro*, 94 Conn. App. 14, 25, 891 A.2d 41 (2006). In their reply brief, Brett and ProxySoft Worldwide clarify that the "formal written and signed judgment" that they assert the court should have issued and a judgment file are not one and the same.

[21] The statement of issues section of Brett and ProxySoft Worldwide's principal appellate brief sets forth four issues, including the following: "While pivotal issues regarding a temporary injunction and a temporary receivership remained unresolved, should the trial court have held that there was a final judgment in the case?" Additionally, the argument section of Brett and ProxySoft Worldwide's principal appellate brief contains a heading that reads: "Point 3: Outstanding issues as to the temporary injunction and the receivership should have been decided before judgment issued." Nowhere in their principal appellate brief, however, do Brett and ProxySoft Worldwide provide any legal analysis in support of these assertions. The crux of Brett and ProxySoft Worldwide's contentions under the "Point 3" heading is that, in its turnover and charging order, the court improperly ordered injunctive relief and continued the receivership, which we address in part III of this opinion and which has no bearing on the question of whether the court correctly concluded that it had rendered a final judgment giving rise to postjudgment enforcement proceedings. Thus, insofar as Brett and ProxySoft Worldwide attempt to assert on appeal that there were "[o]utstanding issues" regarding the ex parte temporary injunction and temporary receivership ordered by the court that precluded the rendering of a final judgment that gave rise to postjudgment enforcement proceedings, we decline to review this issue. See *Hebrand* v. *Hebrand*, 216 Conn. App. 210, 224 n.11, 284 A.3d 702 (2022) ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.)). In their reply brief, Brett and ProxySoft Worldwide include a little more than one page of analysis under the following heading: "Point 3. Important issues remained open on March 4, 2021." The analysis in the reply brief does not prove helpful, and, in any event, "we consider an argument inadequately briefed when it is delineated only in the reply brief." *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 378 n.6, 3 A.3d 892 (2010).

[22] Brett and ProxySoft Worldwide cite Practice Book § 64-1 to support their argument. Their reliance on this rule of practice is misplaced.

Practice Book § 64-1 provides in relevant part: "(a) The trial court shall state its decision either orally or in writing . . . in making any . . . rulings that constitute a final judgment for purposes of appeal under Section 61-1, including those that do not terminate the proceedings. The court's decision shall encompass its conclusions as to each claim of law raised by the parties and the factual basis therefor. . . .

"(b) If the trial judge fails to file a memorandum of decision or sign a transcript of the oral decision in any case covered by subsection (a), the appellant may file with the appellate clerk a notice that the decision has not been filed in compliance with subsection (a). . . . The appellate clerk shall promptly notify the trial judge of the filing of the appeal and the notice. The trial court shall thereafter comply with subsection (a)."

Practice Book § 64-1 does not operate to inform the issue of whether a judgment is final; rather, its purpose is to help create an adequate record for appellate review. See *Stechel* v. *Foster*, 125 Conn. App. 441, 445, 8 A.3d 545 (2010) ("[w]hen the record does not contain either a memorandum of decision or a transcribed copy of an oral decision signed by the trial court stating the reasons for its decision, this court frequently has declined to review the claims on appeal because the appellant has failed to provide the court with an adequate record for review" (internal quotation marks omitted)), cert. denied, 300 Conn. 904, 12 A.3d 572 (2011). Indeed, to cure a trial court's failure to comply with § 64-1 (a), subsection (b) provides for

the filing of a notice *after* an appeal has been filed. Thus, § 64-1 does not advance Brett and ProxySoft Worldwide's argument.

[23] Brett and ProxySoft Worldwide relatedly argue that the court never issued *notice* of a "formal written and signed judgment" rendered in the present case. This argument is untenable in light of our rejection of the "formal written and signed judgment" requirement proposed by Brett and ProxySoft Worldwide. Moreover, in their principal appellate brief, Brett and ProxySoft Worldwide acknowledge that they received electronic notice of the March 4, 2021 decision determining the amount of the plaintiffs' punitive damages award under CUTPA. Thus, Brett and ProxySoft Worldwide received notice of the final judgment rendered on that date.

[24] Additionally, Brett and ProxySoft Worldwide claim that the plaintiffs failed to proffer evidence to justify injunctive relief in the turnover and charging order and that the court failed to conduct an evidentiary hearing on that issue. Brett and ProxySoft Worldwide do not provide any appreciable legal analysis in support of this claim. Accordingly, we conclude that this claim is inadequately briefed, and we decline to review it. See *Onofrio* v. *Mineri*, 207 Conn. App. 630, 637, 263 A.3d 857 (2021) (" 'Both this court and our Supreme Court "repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." . . . *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016); see also *Parnoff* v. *Mooney*, 132 Conn. App. 512, 518, 35 A.3d 283 (2011) ("[i]t is not the role of this court to undertake the legal research and analyze the facts in support of a claim or argument when it has not been briefed adequately . . . .").' *Seaport Capital Partners*, *LLC* v. *Speer*, 202 Conn. App. 487, 489–90, 246 A.3d 77, cert. denied, 336 Conn. 942, 250 A.3d 40 (2021); see also Practice Book § 67-4.").

[25] Brett and ProxySoft Worldwide also cursorily assert that the court continued the receivership with no supporting evidence submitted by the plaintiffs and without conducting an evidentiary hearing. We decline to review this claim because, like Brett and ProxySoft Worldwide's similar claim concerning the court's order of injunctive relief in the turnover and charging order, we conclude that it is inadequately briefed. See footnote 24 of this opinion.

_____